668 June 6, 2013 No. 27

IN THE SUPREME COURT OF THE
STATE OF OREGON

Bart G. BRANDRUP
and Jessica D. Brandrup,
husband and wife,
*Plaintiffs*,

*v.*

RECONTRUST COMPANY, N.A.;
Bank of America, N.A.,
successor by merger with
BAC Home Loans Servicing, LP;
The Bank of New York Mellon,
fka The Bank of New York,
as Trustee for The Certificate Holders Cwalt, Inc.,
Alternative Loan Trust 2006-2CB,
Mortgage Pass-through Certificates;
and Mortgage Electronic Registration Systems, Inc.,
*Defendants*.

United States District Court 311CV1390HZ

Russell R. POWELL
and Diane L. Powell,
husband and wife,
*Plaintiffs*,

*v.*

RECONTRUST COMPANY, N.A.;
Bank of America, N.A.,
successor by merger with
BAC Home Loans Servicing, LP;
The Bank of New York Mellon,
fka The Bank of New York,
as Trustee for The Certificate Holders Cwalt, Inc.,
Alternative Loan Trust 2007-OH3,
Mortgage Pass-through Certificates, Series 2007-OH3;
and Mortgage Electronic Registration Systems, Inc.,
*Defendants*.

United States District Court 311CV1399HZ

Deanira MAYO
and Reynalda Paez Plancarte,
*Plaintiffs,*

*v.*

RECONTRUST COMPANY, N.A.;
Bank of America, N.A.,
successor by merger with
BAC Home Loans Servicing, LP;
Deutsche Bank National Trust Company,
as Trustee for The Certificate Holders of the
Morgan Stanley ABS Capital I, Inc., Trust 2005-HE2,
Mortgage Pass-through Certificates, Series 2005-HE2;
and Mortgage Electronic Registration Systems, Inc.,
*Defendants.*

United States District Court 311CV1533SI

Omid MIRARABSHAHI,
*Plaintiff,*

*v.*

RECONTRUST COMPANY, N.A.;
Bank of America, N.A.,
successor by merger with
BAC Home Loans Servicing, LP;
The Bank of New York Mellon,
fka The Bank of New York,
as Trustee for The Certificate Holders of CWMBS, INC.,
CHL Mortgage Pass-Through Trust 2007-4,
Mortgage Pass-through Certificates, Series 2007-4;
and Mortgage Electronic Registration Systems, Inc.,
*Defendants.*

United States District Court 312CV0010HA
(SC S060281)

En Banc

On certified questions from the United States District
Court; certification order dated April 2, 2012, certification
accepted July 19, 2012, argued and submitted January 8,
2013.

Jeffrey A. Myers, Bowles Fernández Law LLC, Lake Oswego, argued the cause for plaintiffs. With him on the briefs were Jeffrey A. Myers, John Bowles, and Rick Fernández.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland argued the cause for defendant Mortgage Electronic Registration Systems, Inc. With him on the brief were Kevin H. Kono, Frederick B. Burnside, and P. Andrew McStay, Jr., Davis Wright Tremaine LLP, Portland.

Thomas M. Hefferon, Goodwin Proctor LLP, Washington DC, argued the cause for defendants ReconTrust Company, N.A.; Bank of America, N.A.; The Bank of New York Mellon; and Deutsche Bank National Trust Company. With him on the brief were Steven A. Ellis, Washing ton DC, and Thomas W. Sondag, Pilar C. French, and Peter D. Hawkes, Lane Powell PC, Portland.

Rolf C. Moan, Assistant Attorney General, Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General, filed a brief on behalf of *amicus curiae* State of Oregon.

Nanina D. Takla, Law Office of Phil Goldsmith, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Sara Kobak, W. Michael Gillette, and Jordan Silk, Schwabe, Williamson & Wyatt, PC, Portland, filed a brief on behalf of *amicus curiae* Oregon Land Title Association.

Thomas W. Brown, Thomas M. Christ, and Robert E. Sabido, Cosgrave Vergeer Kester LLP, Portland, filed a brief on behalf of *amici curiae* Mortgate Bankers Association, Oregon Bankers Association, and Independent Community Banks of Oregon.

BREWER, J.

Certified questions answered.

Kistler, J., concurred in part and dissented in part, and filed an opinion in which Balmer, C. J., joined.

**BREWER, J.**

These cases come before this court on four certified questions of law from the United States District Court for the District of Oregon. *See Brandrup v. ReconTrust Co.*, 352 Or 320, 287 P3d 423 (2012) (accepting certified questions); ORS 28.200 to 28.255 (providing procedure for certifying questions to the Oregon Supreme Court and authorizing court to answer certified questions). The questions all are concerned with a practice that has arisen in the home mortgage industry in the last twenty years—that of drafting mortgages and trust deeds so that a certain Delaware corporation, Mortgage Electronic Registration Systems, Inc. (MERS), rather than the lender, is identified as the security instrument's "mortgagee" or "beneficiary." That practice allows lenders and other entities dealing in home loans to track their transactions in a database maintained by MERS. In Oregon, the practice has come under scrutiny in a number of foreclosure cases arising under the Oregon Trust Deed Act (OTDA), ORS 86.705 to ORS 86.795.

As will be explained more fully below, the OTDA provides an alternative to the traditional judicial foreclosure process that is available only when the home loan is secured by a trust deed, and, even then, only when certain conditions are satisfied. One condition for foreclosing under the OTDA is that "any assignments" of the trust deed by the trust deed "beneficiary" be recorded in the real property records of the county where the encumbered property is situated. ORS 86.735(1). Some homeowners threatened with foreclosure under the OTDA have recognized that, although the original lenders transferred their interests to other parties, the changes in beneficial ownership were not recorded in the real property records of the counties where their properties are situated. Those homeowners have resisted foreclosure under the OTDA on the ground that the transfers were not recorded. They argue, *inter alia*, that ORS 86.735(1) requires the recording of any assignment of a trust deed by the owner of the beneficial interest in the trust deed and that the identification of MERS as the trust deed "beneficiary" is ineffective.

Some cases filed in Oregon state courts that have raised these issues have been removed to federal court, and the judges within the District of Oregon have used differing analyses and reached differing conclusions. *See, e.g.*, *Sovereign v. Deutsche Bank*, 856 F Supp 2d 1203 (D Or 2012); *James v. ReconTrust Co.*, 845 F Supp 2d 1145 (D Or 2012); *Reeves v. ReconTrust Co.*, 846 F Supp 2d 1149 (D Or 2012); *Beyer v. Bank of America*, 800 F Supp 2d 1157 (D Or 2011). Recognizing that the issues turn on the proper construction of Oregon statutes and that this court is the ultimate arbiter of such matters, the district court in these cases certified the following questions to this court:

> Certified Question No. 1: May an entity, such as MERS, that is neither a lender nor successor to a lender, be a 'beneficiary' as that term is used in the Oregon Trust Deed Act?

> Certified Question No. 2: May MERS be designated as beneficiary under the Oregon Trust Deed Act where the trust deed provides that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests"?

> Certified Question No. 3: Does the transfer of a promissory note from the lender to a successor result in an automatic assignment of the securing trust deed that must be recorded prior to the commencement of nonjudicial foreclosure proceedings under ORS 86.735(1)?

> Certified Question No 4: Does the Oregon Trust Deed Act allow MERS to retain and transfer legal title to a trust deed as nominee for the lender, after the note secured by the trust deed is transferred from the lender to a successor or series of successors?

We accepted the district court's certification and allowed the parties in the federal cases to present their views. We answer those questions—in two instances as reframed—as follows:

> (1) "No." For purposes of ORS 86.735(1), the "beneficiary" is the lender to whom the obligation that the trust deed secures is owed or the lender's

successor in interest. Thus, an entity like MERS, which is not a lender, may not be a trust deed's "beneficiary," unless it is a lender's successor in interest.

(2)   We reframe the second question as follows:

*Is MERS eligible to serve* as beneficiary under the Oregon Trust Deed Act where the trust deed provides that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests"?

Answer:  "No." A "beneficiary" for purposes of the OTDA is the person to whom the obligation that the trust deed secures is owed. At the time of origination, that person is the lender. The trust deeds in these cases designate the lender as the beneficiary, when they provide: "This Security Instrument secures to Lender: (i) the repayment of the loan, and all renewals, extensions and modifications of the note; and (ii) the performance of borrower's covenants and agreements under this security instrument and the note." Because the provision that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS *** has the right to exercise any or all of those interests," does not convey to MERS the beneficial right to repayment, the inclusion of that provision does not alter the trust deed's designation of the lender as the "beneficiary" or make MERS eligible to serve in that capacity.

(3)   "No." ORS 86.735(1) does not require recordation of "assignments" of a trust deed by operation of law that result from the transfer of the secured obligation.

(4)   We answer the question, as reframed below, in two parts:

(4)(a)  "Does the Oregon Trust Deed Act allow MERS to hold and transfer legal title to a trust deed as nominee for the lender, after the note secured by

the trust deed is transferred from the lender to a successor or series of successors?"

Answer: "No." For purposes of the OTDA, the only pertinent interests in the trust deed are the beneficial interest of the beneficiary and the legal interest of the trustee. MERS holds neither of those interests in these cases, and, therefore, it cannot hold or transfer legal title to the trust deed. For purposes of our answer to the first part of the fourth certified question, it is immaterial whether the note secured by the trust deed has previously been "transferred from the lender to a successor or series of successors."

(4)(b) "Does MERS nevertheless have authority as an agent for the original lender and its successors in interest to act on their behalves with respect to the transfer of the beneficial interest in the trust deed or the nonjudicial foreclosure process?"

Answer: The power to transfer the beneficial interest in a trust deed or to foreclose it follows the beneficial interest in the trust deed. The beneficiary or its successor in interest holds those rights. MERS's authority, if any, to perform any act in the foreclosure process therefore must derive from the original beneficiary and its successors in interest. We are unable to determine the existence, scope, or extent of any such authority on the record before us.

As a preface to our explanation of those answers, we set out the following legal and factual background.

## I.   BACKGROUND

### A.   *Mortgages, Trust Deeds, and the Oregon Trust Deed Act*

When a person borrows money to purchase a home, in Oregon as elsewhere, the loan usually is memorialized in a promissory note that contains the borrower's written, unconditional promise to pay certain sums at a specified time or times. Generally, the borrower and lender also enter into a separately-memorialized security agreement—a mortgage or, more commonly in Oregon, a trust deed. *See generally* Grant Nelson and Dale Whitman, *Real Estate Finance Law* §§ 2.1, 5.27, 5.28 (5th ed 2007); Joseph L. Dunne, *Enforcing the Oregon Trust Deed Act*, 49 Willamette L Rev 77, 81-85

(2012). Oregon subscribes to the "lien theory," rather than the "title theory," of mortgages. Under the title theory, the borrower conveys actual title to the burdened property to the lender to secure the obligation to repay. Under the lien theory, the borrower merely conveys a "right, upon condition broken, to have the mortgage foreclosed and the mortgaged property sold to satisfy [the underlying debt]." *Schleef v. Purdy*, 107 Or 71, 78, 214 P 137 (1923). Thus, in the traditional security arrangement—the mortgage—the borrower conveys to the lender a lien on the property being purchased, to secure the promise to repay that is contained in a promissory note. If the borrower defaults on the note, the lender, or the lender's successor in interest, may exercise its right to sell the property to satisfy the obligation, but it must do so by bringing a judicial action against the borrower. *Id.* at 75-79; ORS 88.010 (except as otherwise provided by law, lien upon real property shall be foreclosed by a suit).

The OTDA, Or Laws 1959, ch 625, codified at ORS 86.705 to ORS 86.795, was enacted in 1959 to provide an alternative to the judicial foreclosure process. Ronald Brady Tippetts, *Note, Mortages—Trust Deeds in Oregon*, 44 Or L Rev 149, 149-50 (1965). That nonjudicial alternative is available when the parties use a trust deed to secure the loan. A trust deed is a deed executed under the OTDA that "conveys an interest in real property to a trustee in trust to secure the performance of an obligation the grantor or other person named in the deed owes to a beneficiary." ORS 86.705(7). The OTDA permits the trustee appointed under a trust deed to advertise and sell the property to the highest bidder without judicial involvement. ORS 86.710; ORS 86.755. Like a mortgage, a trust deed creates a lien on real property to secure an underlying obligation in the event of a default. *See* ORS 86.705(7); *see also Sam Paulsen Masonry v. Higley*, 276 Or 1071, 1075, 557 P2d 676 (1976) (mortgage or trust deed creates only lien on real property). Indeed, a trust deed creates *two* distinct interests—a legal interest and a beneficial interest. First, a trust deed "conveys an interest in real property to a trustee in trust to secure the performance of an obligation." ORS 86.705(7). That legal interest includes the power to sell the obligated property in the manner prescribed in the statute on the grantor's

default. ORS 86.710. However, if the trustee utilizes its power of sale, the proceeds of the sale, after expenses, must be applied "to the obligation secured by the trust deed"— that is, to satisfy the obligation that the borrower owes to the beneficiary. ORS 86.765(2). Accordingly, the trustee holds and exercises its legal interest in the encumbered property for the benefit of the trust deed's "beneficiary"—the person "named or otherwise designated in [the] trust deed as the person for whose benefit [the] trust deed is given." ORS 86.705(1). The second interest that is created by a trust deed—the beneficial or equitable interest in the lien granted therein—thus is held by the beneficiary. That interest is the security for the performance of the obligation that is owed to the beneficiary. ORS 86.705(7).

A trustee may conduct a nonjudicial foreclosure sale only when certain conditions are satisfied. *See* ORS 86.735 (setting out conditions). Those conditions include: (1) recording of "[t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee * * * in the mortgage records of the counties in which the property described in the deed is situated," ORS 86.735(1); (2) a default on the obligation, "the performance of which is secured by the trust deed," ORS 86.735(2); (3) recording of a notice of default containing the trustee's or beneficiary's election to sell the property to satisfy the obligation, ORS 86.735(3); and (4) the absence of any pending or completed action for recovery of the debt, with limited exceptions. *See*, *e.g.*, ORS 86.735(4).

In addition to those conditions, the OTDA prescribes notice requirements that protect trust deed grantors from unauthorized nonjudicial foreclosures and sales of property. Among other things, a trustee is required to provide to the grantor and other interested parties at least 120 days' advance notice of the trustee's sale. ORS 86.740(1). Although judicial involvement is not required to complete a foreclosure by advertisement and sale, the 120-day advance notice period gives a grantor time to seek judicial intervention in certain circumstances, as plaintiffs in these cases have done.

The grantor has a right to cure the default at any time up to five days before the date last set for the sale. ORS 86.753. If the trustee has complied with the statutory notice requirements and the default is not cured, the trustee may sell the property at a public auction to the highest bidder without judicial oversight. ORS 86.755. In contrast to the judicial foreclosure process, a grantor has no statutory right to redeem the property after a completed trustee's sale. *Compare* ORS 88.080 (providing right of redemption after sale) *with* ORS 86.770(1) (trustee's sale forecloses and terminates interests in property of any person to whom required notice of the sale was given). After a trustee's sale, the trustee must execute and deliver a trustee's deed to the purchaser, which must recite details of the foreclosure. ORS 86.775. If the trustee's deed is recorded in the pertinent county records, the facts recited in the deed are considered *prima facie* evidence of the truth of the matters set forth therein, and are conclusive in favor of a purchaser for value who relies on them in good faith. ORS 86.780.

Of course, only a small portion of the property transactions involving trust deeds end in foreclosure. If the borrower repays the loan secured by the trust deed in full, the trustee must "reconvey the estate of real property described in the trust deed" (that is, release the lien on the property) to the borrower, ORS 86.720, and that reconveyance may be publicly recorded in the pertinent real property records.

## B.   *Assignment and Recording of Trust Deeds*

Mortgages or trust deeds may be transferred in a variety of ways. By statute, mortgages may be "assigned by an instrument in writing," and such written assignments may be recorded in the pertinent real property records. ORS 86.060 ("mortgages may be assigned by an instrument in writing \* \* \* and recorded in the records of mortgages of the county where the land is situated").[1] But mortgages also have been held to "follow" the promissory notes that they secure so that, by operation of law, the sale or transfer of a promissory

---

[1] Although that statute initially was enacted with mortgages in mind, it applies equally to trust deeds. *See* ORS 86.715 ("a trust deed is deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property except to the extent that such laws are inconsistent with [the OTDA]").

note effects an equitable transfer of the mortgage that secures that note. *Bamberger v. Geiser*, 24 Or 203, 206-07, 33 P 609 (1893) ("where a debt is secured by mortgage, the debt is the principal and the mortgage is the incident, and *** an assignment of the debt is an assignment of the mortgage"); *Barringer v. Loder*, 47 Or 223, 229, 81 P 778 (1905) (same).[2]

Although the recordation of a mortgage or trust deed assignment generally is not required to make the transfer legally effective between the parties, it is necessary and desirable for protecting an assignee's interest under the security instrument against a purchaser in good faith for valuable consideration. *See Willamette Col. & Credit Serv. v. Gray*, 157 Or 77, 83, 70 P2d 39 (1937) (assignee of mortgage was not obliged to take and record written assignment to acquire title as between immediate parties but was required to do so to maintain lien against innocent purchaser); *see also* ORS 93.640 (every conveyance, deed, or assignment affecting an interest in real property which is not recorded as provided by law is void as against any subsequent purchaser in good faith for valuable consideration). The recordation of a trust deed assignment is necessary for an additional reason: As described above, 353 Or at 677, the trust deed and "any assignments of the trust deed by the trustee or the beneficiary" must be recorded in the relevant land records before the nonjudicial foreclosure procedure set out at ORS 86.740 - 86.755 may be invoked. ORS 86.735(1).

## C. *The MERS Corporation*

MERS is a creature of the real estate finance industry. In the mid-1990's, large players in the industry, including the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac), decided to create a database that would electronically track ownership in secured real estate loans as they were bought and sold in a secondary market, generally in packages now known as mortgage-backed securities. R. K. Arnold, *Yes, There is Life on MERS*, 11 Prob & Prop 33, 33-34 (1997). They created MERSCorp

---

[2] Again, that principle applies equally when the promissory note is secured by a trust deed; the trust deed follows the note by operation of law.

Holdings, a "member-based organization made up of thousands of lenders, servicers, sub-servicers, investors and government institutions." *See MERSCORP Holdings, Inc.*, http://www.mersinc.org/about-us/faq (accessed May 22, 2013). The primary product of MERSCorp Holdings was and is the "MERS System," a "national electronic database that tracks changes in mortgage servicing and beneficial ownership interests in loans secured by residential real estate." *Id.*

But there is another significant aspect of MERS; that entity serves as the designated mortgagee or beneficiary, as the nominee of the lender, for all mortgages and trust deeds registered in the MERS System. *Id.* Christopher L. Peterson, *Foreclosure, Subprime Lending, and the Mortgage Electronic Registration System*, 78 U Cincinnati L Rev 1359, 1361-62 (2009). MERS, however, does not make, service, or invest in loans. *Id.* at 1371.

## D.   The Trust Deeds and Plaintiffs' Challenges

The certified questions that are before this court arise out of four separate actions challenging a trustee's attempt to nonjudicially foreclose a trust deed securing residential property. In each case, homeowners (collectively, "plaintiffs") financed the purchase of a residence in Oregon with a loan from a lender that is a member of MERS. In each case, the homeowners signed (1) a promissory note pledging to repay the money borrowed, plus interest, according to a prescribed schedule and by a specified date, and (2) a "Deed of Trust," granting to a named trustee the property they had purchased with the loan, "in trust, with power of sale," to secure the payment of the promissory note and other related promises.

Except for the names and property descriptions, the trust deeds in the four cases are identical. In a "definition" section, each trust deed identifies the "Borrower," "Lender" and "Trustee" by name, and then sets out the following definition of "MERS":

> "'MERS' is Mortgage Electronic Registration System, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."

In a section entitled "Transfer of Rights in the Property," the trust deed states:

> "*The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.* For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property \*\*\*, [t]ogether with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the Property. *Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.*

(Emphases added.)

Those provisions appear to turn the traditional three-party trust deed arrangement—debtor/grantor, trustee, and lender/beneficiary—into a four-party arrangement, with the functional role of the beneficiary being split between two entities. Although the benefit of the trust deed is reserved to the "Lender" (because the trust deed "secures to the Lender" the obligations of repayment and performance of other covenants), MERS purports to be the beneficiary "as nominee for Lender and Lender's successors and assigns."

Plaintiffs in all four cases signed the promissory notes and trust deeds as described, and, after a period of years, allegedly defaulted on their loans. Following each default, MERS executed a written assignment of the trust deed to the reputed ultimate successor in interest of the original lender and recorded that assignment in the

pertinent real property records. Each of those assignees then appointed a new trustee, ReconTrust Company, N.A., and that assignment also was recorded. Thereafter, ReconTrust, as trustee, commenced the process of nonjudicial foreclosure under each trust deed, issuing notices of the grantor's default and the trustee's election to sell.

In all four cases, plaintiffs brought an action in state court against ReconTrust, MERS, and the reputed ultimate successor in interest of their original lender, seeking to enjoin the nonjudicial foreclosure proceeding on a number of grounds, including that (1) a condition for nonjudicial foreclosure had not been satisfied—specifically, the requirement in ORS 86.735(1) that any assignments of the trust deed by the "beneficiary" be publicly recorded in the pertinent real property records; and (2) MERS's purported assignment of the trust deed to the reputed ultimate successor in interest was ineffective, because, at the time of the purported assignment, "the principal for whom MERS purported to act as 'beneficiary' did not hold plaintiff's loan at that date." Defendants removed the cases to federal court, and then filed motions to dismiss under FRCP 12 (b)(6), arguing that MERS was the lawful beneficiary under the trust deeds, that all assignments of the trust deeds by the named "beneficiary," MERS, had been recorded, and that ORS 86.735(1) did not require assignments of the trust deeds by the lenders to be recorded. The federal district court certified the questions set out above to this court. We consider the questions in order.

## II. FIRST CERTIFIED QUESTION

"May an entity, such as MERS, that is neither a lender nor successor to a lender, be a 'beneficiary' as that term is used in the Oregon Trust Deed Act?"

This question is one of statutory construction, which we approach using the methodology described in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We focus first on the text, context, and any legislative history brought to our attention by the parties that we find useful, and proceed to general maxims of statutory construction if the legislature's

intent remains obscure. *Id*. at 171-72. The pertinent text is the definition of "beneficiary" that appears in ORS 86.705:

"As used in ORS 86.705 to 86.795 [that is, the Oregon Trust Deed Act]:

"*****

"(2) 'Beneficiary' means a person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest, and who is not the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d)."[3]

There is no dispute about the meaning of the last clause. Rather, the parties square off over the meaning of the requirements that the person (1) be "named or otherwise designated in [the] trust deed," (2) "as the person for whose benefit the trust deed is given." Taking the latter phrase first, the "benefit" of a trust deed is the security it provides with respect to an obligation owed by the grantor to the beneficiary. That is made clear in many of the surrounding statutes. For example, as noted, the term "trust deed" is defined as "a deed executed in conformity with ORS 86.705 to 86.795 that conveys an interest in real property to a trustee in trust *to secure the performance of an obligation the grantor or other person named in the deed owes to a beneficiary*." ORS 86.705(7) (emphasis added). Similarly, "grantor" is defined as "the person that conveys an interest in real property by a trust deed *as security for the performance of an obligation*." ORS 86.705(4) (emphasis added). Finally, ORS 86.710, which generally describes the power of a trustee to nonjudicially foreclose, begins with a general description of a trust deed: "Transfers in trust of an interest in real property may be made *to secure the performance of an obligation of a grantor*, or any other person named in the deed, *to a beneficiary*."

---

[3] We use the current version of the statute, which is numbered differently but does not otherwise vary materially from the version in effect when the parties signed the trust deeds. That version, ORS 86.705 (2005), provided:

"As used in ORS 86.705 - 86.795*, unless the context requires otherwise*;

"(1) 'Beneficiary' means *the* person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest, and who *shall not be* the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d)."

(Differences in italics.)

(Emphasis added.) Thus, the person "for whose benefit the trust deed is given" is the person to whom the grantor owes an obligation, the performance of which the trust deed secures.

That analysis, however, speaks only to the second half of the wording of the definition. Plaintiffs suggest that the initial phrase "the person named or otherwise designated as" means that the trust deed must identify (name or otherwise designate) the person who meets the definition of "beneficiary" as that term is used in the statute. Defendants contend, to the contrary, that the legislature used that phrase to signify that the parties to the trust deed could agree to "name" or "designate" whomever they chose to serve "as" beneficiary—and that, for purposes of ORS 86.705(2), the "beneficiary" would be the person so designated. Thus, as defendants conceive it, designation of a beneficiary is purely a matter of contract. Plaintiffs' contrary interpretation, defendants assert, essentially turns the initial phrase of the definition into surplusage, violating a fundamental principle of statutory construction set out at ORS 174.010; that is, "not *** to omit what has been inserted."

We do not agree that plaintiffs' reading removes the phrase "named or otherwise designated as" from the statute. As noted above, plaintiffs read the statutory definition as providing that, *in addition to* being the person "for whose benefit the trust deed is given," the beneficiary must be "named or otherwise designated" as such *in the trust deed*. That reading uses all of the words of the statute. Indeed, we find plaintiffs' reading of the definition to be more compelling, on a purely textual level, than defendants'. If defendant's reading were correct, then *anyone*—even a person with no connection to or interest in the transaction at all—could be designated in the agreement. If the legislature had intended "beneficiary" to have the circular meaning that defendants suggest—that "beneficiary" means whomever the trust deed *names* as the "beneficiary"—it would have had no reason to include any description of the beneficiary's functional role in the trust arrangement. The fact that the statute *does* include such a description ("the person for whose benefit the trust deed is given") strongly suggests that the legislature

intended to define "beneficiar[ies]" by their functional role, not their designation. Stated differently, by including such a functional description, it is apparent that the legislature intended that the beneficiary of the trust deed be the person to whom the obligation that the trust deed secures is owed.

As discussed, in a typical residential trust deed transaction, the obligation secured by the trust deed is memorialized in a promissory note that contains a borrower's promise to repay a home loan to a lender. At inception, the lender is the person who is entitled to repayment of the note and, thus, functionally is "the person for whose benefit the trust deed is given." That person's "successor in interest," whom ORS 86.705(2) also recognizes as a beneficiary, is a person who succeeds to the lender's rights.

Defendants contend that another provision of the OTDA, ORS 86.720(3), undermines that construction of ORS 86.705(2). ORS 86.720 addresses the circumstance in which the obligation secured by a trust deed has been satisfied, but either the beneficiary or trustee has failed or refused to release the trust deed. In such a circumstance, where a title insurance company or insurance producer has satisfied the obligation through an escrow, ORS 86.720(1) authorizes the insurer, in a backup role, to issue and record a release of the trust deed to clear title. In that context, ORS 86.720(3) provides:

> "Prior to the issuance and recording of a release [of the lien upon performance of the obligation secured by the trust deed], the title insurance company or insurance producer shall give notice of the intention to record a release of trust deed to the *beneficiary of record and, if different, the party to whom the full satisfaction was made*."

(Emphasis added.)

Defendants assert that the emphasized text shows that the legislature understood that the "beneficiary" need not be the lender or the lender's successor in interest. We do not agree that the statutory text necessarily—or even probably—bears such a construction. It is equally, if not more plausible, to conclude that the phrase "if different, the party to whom the full satisfaction was made," was meant instead to acknowledge the circumstance where a lender's

successor in interest is not the beneficiary "of record," but is entitled to repayment of the underlying obligation. Ironically, that is precisely the circumstance that defendants assert permissibly occurred in these cases and that is the subject of the third certified question discussed below. When the statute is viewed in that light, it reinforces the conclusion that the beneficiary is the lender or the lender's successor in interest. In short, ORS 86.720(3) does not furnish persuasive context that supports defendants' proposed meaning of the term "beneficiary" under the OTDA.

Defendants next contend that the statutory meaning of "beneficiary" must be interpreted in the context of common law principles of agency, freedom of contract, and commercial law. Defendants point to case law showing that Oregon recognizes that an agent, even one without a pecuniary interest, may engage in land transactions and hold title on behalf of a principal. *See, e.g.*, *Halleck v. Halleck et al.*, 216 Or 23, 38, 337 P2d 330 (1959) ("'Conveyances of lands *** may be made by deed, signed by the person *** or by his lawful agent'") (quoting *former* ORS 93.010)); *Bowns v. Bowns*, 184 Or 603, 613, 200 P2d 586 (1948) (estate or interest in real property may be transferred by one's "'lawful agent, under written authority'") (quoting *former* ORS 93.020)); *Kern v. Hotaling*, 27 Or 205, 207, 40 P 168 (1895) (note and mortgage executed to member of brokerage firm as agent for principal).[4] Defendants also point to the "bedrock" principle that "contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts," unless contrary to some "overpowering rule of public policy." *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982) (quoting *Feves v. Feves*, 198 Or 151, 159-60, 254 P2d 694 (1953)). Defendants assert that proper consideration of those common law principles in interpreting the trust deed statutes supports their reading that ORS 86.735(1) allows someone other than an obligee to be the "beneficiary," either because the parties have freely and voluntarily agreed to designate someone else as the beneficiary or because the obligee has chosen to have

_____

[4] Defendants also cite a federal case, *In re Cushman Bakery*, 526 F2d 23, 30 (1st Cir 1975) *cert den*, 425 US 937 (1976) for the proposition that a lien may be recorded in the name of a nominee.

someone act as its agent or nominee. More specifically—
although the premise is implicit—the core of defendants'
"freedom of contract" argument appears to be that, although
MERS has no right to repayment of the notes in these
cases, it nevertheless may be designated by contract as the
beneficiary for other functions, in particular those functions
relating to the control of the foreclosure process.

We disagree. The resolution of this question does not
hinge on the parties' intent; rather, it depends on legislative
intent. That is, the OTDA authorizes nonjudicial foreclosure
only when certain statutory requirements are met. In these
circumstances, the meaning of "beneficiary," as used in
ORS 86.735(1), is determined by statute, and that meaning
is incorporated into, and cannot be altered by, the party's
agreement. *See, e.g. Ocean A. & G. Corp., Ltd. v. Albina
M. I. Wks.*, 122 Or 615, 617, 260 P 229 (1927) ("law of the
land applicable thereto is a part of every valid contract");
*see also*, R. Lord, 11 *Williston on Contracts* § 30:24 (4th ed
1999) ("[i]ncorporation of existing law may act to supersede
inconsistent clauses purporting to define the terms of the
agreement. For instance, where a statute regulates the
amount the government is to pay for a particular service, the
statute controls despite a contract between the government
and the provider of the service agreeing to a lower rate."). If
the legislature had intended to make the parties' agreement
paramount over the statute in this regard, it could have, and
likely would have, included an "unless otherwise agreed"
caveat, as it has in some statutes. *See, e.g.*, ORS 72.3070
("*Unless otherwise agreed*, all goods called for by a contract
for sale must be tendered in a single delivery \*\*\*."). But, in
light of the structure of the OTDA, it is unsurprising that it
did not do so.

The OTDA contemplates a unitary beneficiary
status, so that the person with the right to repayment of
the underlying obligation also controls the foreclosure
process. The interaction of a number of statutory provisions
demonstrates the point. For example, ORS 86.710 gives the
*beneficiary* the power to decide whether to foreclose judicially
or nonjudicially. Under ORS 86.720, the *beneficiary* must
request reconveyance after the secured obligation is satisfied.

ORS 86.737(2)(b)(B) provides that notice to the grantor of a foreclosure sale must include "a telephone number that will allow the grantor access during regular business hours to person-to-person consultation with an individual authorized by the beneficiary to discuss the grantor's payment and loan term negotiation and modification." In addition, under ORS 86.745(1), a notice of sale must include the name of the "beneficiary." ORS 86.753(1) provides that the grantor (and others) may cure a default before a foreclosure sale by making payment, and paying costs and expenses "to the beneficiary." ORS 86.759(5) provides that statutory requirements that the trustee provide default and cure-related information to the grantor and others "do not affect the duty of beneficiaries to provide information to grantors." And, significantly, it is the beneficiary alone who has authority to appoint a successor trustee. ORS 86.790(3). In sum, the integrated effect of those provisions presumes that the collective rights and obligations that define beneficiary status are functionally united; that is, the person entitled to repayment of the secured obligation also controls the foreclosure process.

That functional unity has longstanding roots in the common law itself. A fundamental principle in mortgage law holds that a foreclosing party must have the power to enforce the underlying note. *See United States Nat. Bank v. Holton*, 99 Or 419, 429, 195 P 823 (1921) ("It has always been the law of this state that the assignment of the note carries the mortgage \*\*\*. The assignment of a mortgage independent of the debt which it is given to secure, is an unmeaning ceremony."). That concern underlies the standard doctrine in judicial foreclosure proceedings that the foreclosing party must provide proof that it has the power to enforce the note. *See generally* Alan M. White, *Losing the Paper—Mortgage Assignments, Note Transfers and Consumer Protection*, 24 Loy Consumer L Rev 468, 476-77 (2012) (collecting cases).

Neither can the statutory meaning of "beneficiary" yield to an obligee's decision to use another party as its agent or nominee. Although the cases and statutes cited by defendants show that a lawful agent can have broad authority to *act* on a trust deed beneficiary's behalf in regard

to the exercise of rights under the trust deed, even to the point of appearing on documents in the beneficiary's stead, the agent cannot *become* the "beneficiary" for purposes of a statutory requirement that is defined, in part, by the status of the "beneficiary." To reinforce the point, the legislature, in recent amendments to the OTDA, has plainly distinguished between a beneficiary and its agents in the nonjudicial foreclosure context. *See*, *e.g.*, ORS 86.735(4) (requiring either "the beneficiary or the beneficiary's agent" to certify compliance with statutory requirements as a condition of nonjudicial foreclosure).[5] Here, the "beneficiary" to which ORS 86.735(1) refers must be "the person for whose benefit the trust deed [was] given," that is (as discussed), the person to whom the obligation that the trust deed secures is owed or that person's successor in interest. By the terms of the trust deeds at issue in these cases, those persons are the lenders ("[t]his Security Instrument secures *to Lender*: (i) the repayment of the Loan") or their successors. Unless the lenders have transferred such interests to their agents or nominees, the latter persons cannot become "beneficiaries" for purposes of the OTDA.[6][7]

In sum, our answer to the first question certified by the district court is as follows: For purposes of ORS 86.735(1), the "beneficiary" is the lender to whom the obligation that the trust deed secures is owed or the lender's successor in interest. Thus, an entity like MERS, which is not a lender, may not be a trust deed's "beneficiary," unless it is a lender's successor in interest.

---

[5] The 2012 legislature significantly amended the OTDA. The quoted wording from ORS 86.735(4) was one of the amendments. Or Laws 2012, ch 112, § 6.

[6] We discuss defendants' other arguments pertaining to the law of agency, including their argument that MERS, as the lender's "nominee," may hold "legal title" to the lender's rights under the trust deed, in our answer to the fourth certified question.

[7] Defendants also argue that the legislative history of the OTDA supports their interpretation of the statute and have included portions of the legislative history in support of that claim. Defendants' theory is that, insofar as the legislative history discloses that the legislature's general purpose in enacting the OTDA was to provide a simpler and more economical method of foreclosure to attract more lenders to Oregon, an interpretation that permits the parties to contractually appoint a beneficiary would advance that purpose. We do not find the proffered history, or defendants' theory of its relevance, to be helpful, and do not discuss it further.

### III.   SECOND CERTIFIED QUESTION

"Is MERS eligible to serve as beneficiary under the Oregon Trust Deed Act where the trust deed provides that MERS 'holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests'?"

This question goes to defendants' theory that, under the OTDA, MERS is eligible to serve as "beneficiary" of a trust deed in a role as the obligee's agent or nominee. The theory behind the question is: If ORS 86.705(2), in fact, defines "beneficiary" in terms of a beneficiary's function in the trust arrangement, which function is defined, in turn, by the beneficiary's rights that are secured by the trust deed, then an agent or nominee who has been delegated sufficient rights should qualify as a beneficiary under the statute. Defendants contend that the obligees that MERS serves, as agent or nominee, have delegated to MERS sufficient rights for that purpose. Because the more precise question is whether MERS is eligible to serve as a beneficiary under the OTDA, not whether it may be "designated" as such, we amend the certified question and answer it accordingly.

Defendants argue, first, that by defining MERS as the beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns," the trust deeds in these cases clearly convey an intention that MERS act as the lender's or its successors' agent. Defendants also contend that MERS's agreement with its members explicitly provides that MERS will serve as the members' common agent—allowing MERS to act as agent or nominee for the initial lender and any successors in interest who are members of MERS.[8] Finally, defendants point to wording in the trust

---

[8] The MERS membership agreement is not in the record, but MERS asserts, in its brief to this court, that the agreement provides that "MERS shall at all times comply with the instruction of the beneficial owner of mortgage loans," and that it grants MERS authority to "execute important documents, foreclose and take all other actions necessary to protect the interests of the noteholder." Defendants also note that other courts have determined, in cases in which the MERS membership agreement *was* placed in the record, that the agreement spells out MERS's duties to its members in those terms. Neither defendants' bare assertions nor the cases

deeds that purports to authorize MERS to exercise all of the lender's rights under the trust deeds:

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, *but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument*."

Defendants argue that if MERS, as the obligee's nominee, must have some or all of the obligee's rights to qualify as the trust deed beneficiary for purposes of ORS 86.705(3), then the broad delegation of power to MERS contained in the quoted provision would be sufficient to make MERS eligble to serve as the "beneficiary."

It is unspoken, but evident, that the necessity to which the above provision refers is the necessity of having MERS be recognized as the trust deed beneficiary for purposes of any requirement that must be satisfied before the trust deed may be nonjudicially foreclosed. That the provision imbues the word "necessary" with an unnatural meaning, with the result that the provision is circular, does not render the provision unenforceable, as plaintiffs seem to suggest. We accept the provision in the way it apparently was intended: It is triggered by any apparent deficiency in MERS's authority to serve as beneficiary, and, according to defendants' theory, results in the delegation to MERS of *any* of the obligee's rights or interests that MERS might be required to have for that purpose.

The problem with defendants' theory, however, is that, while asserting MERS's authority to exercise *all* of the obligee's rights and interests, the provision fails to speak to the *one* interest that an entity must have to qualify as a beneficiary under ORS 86.705(2). As discussed above, 353 Or at 689, the beneficiary under that definition is the person to whom the obligation that the trust deed secures

---

cited provide a basis for this court to determine what the agreements actually provide in the cases before the district court.

is owed. Unless the "law or custom" provision transforms MERS into such an obligee, it cannot transform MERS into the "beneficiary" of the trust deed.

And it is clear that the "law or custom" provision does not have that legal effect. The provision first states that MERS holds "only legal title to the interests *granted by Borrower* in this Security Instrument." When the provision thereafter states that MERS has the right "to exercise any or all of *those* interests," if necessary to comply with law or custom, it refers to the interests "granted by the borrower in this security instrument." But the interests that are granted by the grantor in a trust deed are different from the right to repayment under a related promissory note. As discussed above, 353 Or at 676, the grantor conveys two interests by signing a trust deed: to the trustee, a legal interest in the subject real property, which may be foreclosed upon the obligor's default on the underlying obligation; and to the beneficiary, the beneficial counterpart to that legal interest. In each of the four trust deeds that are at issue, the first (legal) interest is conveyed in the following sentence in the "Transfer of Rights in the Property" provision: "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property." That the lender obtains the *benefit* of the legal interest that is granted to the trustee is conveyed in the preceding sentence:

> "This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note."

Thus, the interests and rights that were "granted by the borrower under this security instrument" were only (1) a legal interest in the property that the trust deed burdens, in the form of a lien; and (2) an equitable or beneficial interest in that lien.

In contrast, in these cases, the interest in the secured obligation that a party must have to qualify as the trust deed's "beneficiary"—the obligation that the trust deed secures—is the right to repayment of the obligation. Although *related* to the above-mentioned interests that

are granted in the trust deed by the grantor, that right to repayment is not one of those interests. That is, the obligee's right to repayment is *secured* by the lien on the property that the grantor grants in the trust deed, but that right exists apart from the trust deed and is not "granted by the borrower in the [trust deed]." It follows that, even if the "law or custom" clause were triggered so that the right to exercise "any or all" interests granted in the trust deed by the borrower was delegated to MERS, MERS still would not have an interest that would qualify it as the trust deed's beneficiary.[9]

To conclude: A "beneficiary" for purposes of the OTDA is the person to whom the obligation that the trust deed secures is owed. At the time of origination, that person is the lender. The trust deeds in these cases designate the lender as the beneficiary, when they provide: "This Security Instrument secures to Lender: (i) the repayment of the loan, and all renewals, extensions and modifications of the note; and (ii) the performance of borrower's covenants and agreements under this security instrument and the note." Because the provision that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS *** has the right to exercise any or all of those interests," does not convey to MERS the beneficial right to repayment of the secured obligation, the inclusion of that provision does not alter the trust deed's designation of the lender as the "beneficiary" or make MERS eligible to serve in that capacity.

## IV.   THIRD CERTIFIED QUESTION

"Does the transfer of a promissory note from the lender to a successor result in an automatic assignment of the securing trust deed that must be recorded prior to the

---

[9] Moreover, the "law or custom" provision purports to delegate to MERS the right "to exercise" any of the interests granted in the trust deed by the grantor; it does not purport to actually convey those interests to MERS. Given that the OTDA defines "beneficiary" in terms of an interest that the beneficiary *has* (the right to payment that the trust deed secures), and not in terms of the interests that the beneficiary does or may *exercise*, it is doubtful that conveying to MERS a right "to exercise" the beneficiary's interest could bring MERS within the statutory definition.

commencement of nonjudicial foreclosure proceedings under ORS 86.735(1)?"

As we already have mentioned, 353 Or at 678-79, Oregon law provides that the transfer of a promissory note that is secured by a mortgage automatically effects, by operation of law, an assignment of the mortgage. Because a trust deed is a species of mortgage and is "subject to all laws relating to mortgages on real property," ORS 86.715, the same principle applies to trust deeds: A trust deed follows the promissory note that it secures. The third certified question thus asks whether such assignments by operation of law are included in the statutory requirement of ORS 86.735(1) that "any assignments of the trust deed by the * * * beneficiary * * * [be] recorded" in the pertinent real property records. If the answer to that question is "yes," then the fact that the promissory notes have been transferred without corresponding recorded assignments of the trust deeds would stand as a bar to nonjudicial foreclosure under ORS 86.735 in the cases before the federal court. Defendants argue, however, that the term "assignments," as used in ORS 86.735(1), refers only to assignments of a trust deed that are memorialized in a writing other than a writing that may serve to transfer the promissory note. Therefore, as defendants argue, the statute does not require that assignments that result from the transfer of a promissory note be recorded before a nonjudicial foreclosure can proceed. The issue is (again) one of statutory construction, this time focusing on the meaning of the phrase "any assignments" in ORS 86.735(1).

The text is not conclusive. Although the term "assignment" may carry a connotation of a written transfer of the trust deed itself, it appears to be broad enough to encompass any manner of transfer of the trust deed, such as by operation of law. The first definition of the word "assign" that appears in *Webster's Third New Int'l Dictionary* 132 (unabridged ed 2002) reflects the narrow connotation: "to transfer to another in writing." However, other definitions that appear in *Webster's*, and those that appear in *Black's Law Dictionary*, do not refer to a writing. In any event, the notion that a security interest may be transferred by operation of law has a long and unchallenged history in this

state, and the word "assignment" at times has been used by this court in connection with that concept. *See, e.g.*, *First National Bk. v. Jack Mathis Gen. Cont.*, 274 Or 315, 321, 546 P2d 754 (1976) ("assignment of a debt carries with it the security for the debt"); *Willamette Col. & Credit Serv.*, 157 Or at 81-82 (using term "assignment" to refer to "mortgage follows the note" principle); *Barringer*, 47 Or at 229 (in enacting statute, legislature "recognize[ed] the right *** to assign [a mortgage] by indorsement of the note"). In short, the choice of the word "assignments" in ORS 86.735(1) does not negate the possibility that the legislature intended to include transfers of trust deeds that occur by operation of law, without a separate writing.

The use of the expansive modifier "any" ("any assignments") is similarly inconclusive. Although it might convey a specific legislative intent that any *manner* of assignments, including those that occur by operation of law, be included in the recordation requirement, it also might simply refer to *every* "assignment" within the intended (possibly narrower) meaning of that term.

The parties also debate the import of statutes related to ORS 86.735(1) that have been offered as context for interpreting that statute. Among others, they point to ORS 86.110(1), which was in effect when the OTDA was enacted,[10] and which pertains to the discharge of record of a mortgage:

> "(1)   Whenever a promissory note secured by mortgage on real property *is transferred by indorsement without a formal assignment of the mortgage*, and the mortgage is recorded, the mortgage, upon payment of the promissory note, may be discharged of record by the owner and holder of the promissory note making and filing with the appropriate recording officer a certificate *** proving the satisfaction of the mortgage, *** that the owner and holder is the owner and holder of the note, *** and that the note has been fully paid and proving that fact to the satisfaction of the recording officer."

---

[10] We set out the current version of ORS 86.110(1), which differs from the version that was in effect in 1959 when ORS 86.735(1) was adopted. The differences are slight and are not relevant to our analysis here.

(Emphasis added.) Defendants contend that the emphasized wording shows that, although this court's cases speak of a transfer of a secured note by indorsement as assigning an associated mortgage by operation of law, the legislature has drawn a distinction between such "transfers" and "assignments" of the mortgage. However, the emphasized wording could support an alternative inference—that "formal assignment" is only one form of "assignment," and that another occurs by operation of law when a note is transferred.[11] Because that alternative construction is at least as plausible as defendants' construction, we conclude that ORS 86.110(1) is of little contextual help in our interpretive endeavor.

What *does* seem significant is that the recording requirement in ORS 86.735 assumes the existence of an assignment in recordable form and that the transfer of a promissory note cannot serve that function. Because a promissory note generally contains no description of real property and does not transfer, encumber, or otherwise affect the title to real property, it cannot be recorded in land title records. *See* ORS 93.600 (real property shall be described for recordation according to United States survey, or by lots, blocks, etc.); ORS 93.610 (providing for separate records for recording deeds and mortgages and "all other real property interests"); ORS 93.630 (requiring index to the record of "deeds, mortgages, and all other real property interests"); ORS 205.130 (county clerk shall have custody of records of deeds and mortgages of real property and record of all maps, plats, contracts, etc. "affecting the title to real property). Although it is true that the parties to the transfer of a promissory note can always memorialize the transfer in a separate writing that *is* recordable, plaintiffs' reading of ORS 86.735(1) would turn that practice into a *requirement*, at

---

[11] Defendants contend that it is evident that the word "formal" in ORS 86.110(1) "was intended to have a meaning consistent with the requirements of ORS 86.060, which describes an 'assignment of mortgage' as an instrument 'executed and acknowledged with the same formality as required in deeds and mortgages of real property'"—and that, as such, it cannot signal a legislative recognition of "assignment" by indorsement of a note as an alternative to "formal assignment." However, because ORS 86.060 was enacted *after* ORS 86.110, defendants' argument about the legislative intention behind the phrase "formal assignment" is speculative.

least when nonjudicial foreclosure is contemplated. But ORS 86.735(1) does not appear to express such a requirement, and certain mortgage statutes that existed at the time ORS 86.735(1) was enacted, one of which bears a remarkable resemblance to ORS 86.735(1), suggest that the legislature did not intend one.

Those mortgage statutes, ORS 86.060 and *former* ORS 86.070 (1959),[12] were enacted together in 1895, in apparent response to pronouncements by this court in *Bamberger*, 24 Or at 210-13, about the absence of any provision in Oregon law for the recording of assignments of mortgages. The first statute, ORS 86.060, provides:

> "Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated."

The second statute, *former* ORS 86.070 (1959), provided:

> "Every assignment of mortgage shall be recorded at full length, and a reference shall be made to the book and page containing such assignment upon the margin of record of the mortgage."

This court discussed the combined effect of those two statutes, at considerable length, in *Barringer*. In that case, Mr. and Mrs. Barringer loaned money to Hayden, evidenced by a note and secured by a mortgage, the latter of which was recorded. The Barringers divorced, and Mrs. Barringer received the note and mortgage as part of their divorce settlement. Later, Mr. Barringer executed an "assignment" of the mortgage to Loder, but Barringer refused to sign an affidavit verifying his claim that he had lost the note and mortgage. Regardless, Loder recorded the assignment, convinced Hayden to pay him the full amount due under the loan, and then recorded a notice canceling the mortgage (which was actually held by Mrs. Barringer). Mrs. Barringer later sued Loder to foreclose on the mortgage. *Barringer*, 47 Or at 224-26. Loder observed that Mr. Barringer's name appeared in the record, and he argued, based on the two

---

[12] *Former* ORS 86.070(1959) was repealed in 1965. Or Laws 1965, ch 252, § 1.

statutes quoted above, that he was entitled to rely solely on the record. In particular, Loder argued that the statutes required all assignments of mortgages to be made in the manner provided therein, and that a mortgage "[could] not be otherwise assigned or transferred than as by these section prescribed." 47 Or at 228.

This court held, instead, that the first statute's use of the permissive word "may," with reference to an assignment by an instrument in writing, "recognize[ed] the right *** to assign by indorsement of the note." *Id.* at 229. The court then added:

> "When it comes to the manner of recording the assignment, the word 'shall' is used. Why use the word 'may' in one section and 'shall' in the succeeding one? The relationship indicates an intendment that there should be a distinction in their application in practice. *** *Assignments in the method designated then could be made before the statute as well as by assignment of the note, and the act simply prescribes that this may still be done by that method, but that such assignments shall be recorded in the manner pointed out.*"

*Id.* at 229-30 (emphasis added). Thus, even though *former* ORS 86.070 required recordation of "every assignment of mortgage," and even though *Barringer* characterized indorsement of a note as an "assignment," only those assignments described in ORS 86.060—that is, assignments by a written instrument with the formalities of a deed or mortgage—were required to be recorded.

ORS 86.060 and *former* ORS 86.070—and *Barringer*—were the law in Oregon when the OTDA was enacted in 1959. It is reasonable to infer that the legislature had that statutory framework in mind when it enacted wording in ORS 86.735(1) that requires "any assignments of the trust deed" to be recorded as a prerequisite to nonjudicial foreclosure. That inference leads to the conclusion that, like the requirement in *former* ORS 86.070 (1959) that "every assignment of mortgage shall be recorded," the requirement in ORS 86.735(1) that "any assignments" be recorded refers *only* to assignments like those described in ORS 86.060, which are "in writing, executed and acknowledged with the

same formality as required in deeds and mortgages of real property." Again, the same reasoning logically applies to assignments of trust deeds, which are "subject to all laws relating to mortgages." ORS 86.715.

The legislature may have intended to impose a different recording regime in the nonjudicial foreclosure context–to require, in that context alone, that a recordable instrument be executed and recorded to document every transfer of a trust deed by indorsement of the associated promissory note, so that a borrower faced with nonjudicial foreclosure could determine whether the person giving notice of foreclosure possessed the beneficial interest in the trust deed at issue and had the right to foreclose. However, the legislature did not clearly express that intent. When the legislature enacted the OTDA and required that "any assignments of the trust deed" be recorded, the nearly identical statute stating that "[e]very assignment of mortgage shall be recorded" required recordation only of formal, written assignments. *Barringer,* 47 Or at 230; *former* ORS 86.070 (1959). There is nothing to indicate that, when it enacted ORS 86.735(1), the legislature did not similarly intend for "assignments" of a trust deed to refer only to formal, written assignments of the trust deed, not transfers by indorsement of the underlying debt instrument. By describing an "assignment of mortgage" as a written instrument executed "with the same formality as required in deeds," ORS 86.060, and then, in the immediately following section, requiring recordation of "[e]very assignment * * * at full length," *former* ORS 86.070 (1950), it is apparent that the only "assignment" the 1959 legislature had in mind in enacting ORS 86.735(1) was an assignment by a written instrument. It follows that, for purposes of ORS 86.735(1), "assignments of the trust deed" means written assignments that are executed and acknowledged with such formalities, not a *post hoc* memorialization of a transfer of the secured obligation created solely for the purpose of recording. Thus, the answer to the third certified question is "no." ORS 86.735(1) does not require recordation of "assignments" of the trust deed by operation of law that result from the transfer of the secured obligation.

In giving that answer, we acknowledge a practical concern that appears to loom in the background of these cases—that construing the phrase "any assignments" in ORS 86.735(1) as applying only to formal, written assignments of a trust deed renders the provision meaningless. In particular (the concern posits), a recording requirement that is so easily bypassed can have no conceivable function in the OTDA's statutory scheme; indeed, read in that way, the requirement precludes homeowners in foreclosure from ascertaining the identity of the true beneficiary. That concern, however, rests on the mistaken assumption that the right of a defaulting homeowner to establish the identity of the true beneficiary depends *exclusively* on plaintiffs' preferred reading of the recording requirement in ORS 86.735(1).

To the contrary, the OTDA is laced with provisions that indicate that the grantor is entitled to know the identity of the beneficiary. As discussed above, ORS 86.753(1), for example, provides that the grantor (and others) may cure a default before a foreclosure sale by making payment, and paying costs and expenses "to the beneficiary." Under ORS 86.737(2)(b)(B), notice to the grantor of a foreclosure sale must include "a telephone number that will allow the grantor access during regular business hours to person-to-person consultation with an individual *authorized by the beneficiary* to discuss the grantor's payment and loan term negotiation and modification." Similarly, under ORS 86.745(1), a notice of sale must include the name of the "beneficiary." Finally, ORS 86.759(5) provides that statutory requirements that the trustee provide default and cure-related information to the grantor and others "do not affect the duty of beneficiaries to provide information to grantors." In sum, those provisions all assume that the true beneficiary must be identifiable. Thus, no part of our answer to the third certified question should be taken to suggest that, where the foreclosing party is not the original lender, the foreclosing party need not provide definitive documentation of its status as the lender's successor in interest to establish its right to foreclose.

For that same reason, the fourth certified question, relating to MERS's authority to act as an agent for a lender or a lender's successor in interest, is important. Although we have concluded that the lender or its successors need not

record assignments of the trust deeds that occur by operation of law, the fact remains that, when those persons fail to do so, they are vulnerable to challenges that may force them to judicially establish their interests and authority to act.[13] With that foundation in place, we turn to the fourth certified question.

## V.   FOURTH CERTIFIED QUESTION

"Does the Oregon Trust Deed Act allow MERS to retain and transfer legal title to a trust deed as nominee for the lender, after the note secured by the trust deed is transferred from the lender to a successor or series of successors?"

Plaintiffs assert:

"The OTDA does not allow MERS to retain or transfer legal title to a trust deed after the promissory note is transferred from the original lender to a successor. This is because MERS has no legal title to the interests conveyed under a trust deed and because once its principal has no legal interests under a trust deed, it may not act on behalf of that principal to do for itself what its principal could not do. Even if it had some claim of legal title to the trust deed document, that would make MERS nothing more than a document custodian, not a beneficiary with rights to assign.

"In addition, even if the trust deeds could somehow be construed to convey legal title to MERS, such a conveyance would be expressly forbidden under the OTDA. As the only interest granted by the Borrower in the security instrument is a lien on the land as security for the repayment on the obligation and that legal title is conveyed to the trustee who holds it in trust for the beneficiary, there is simply no interest for MERS to hold."

Plaintiffs also assert that MERS's powers as an agent are derived from and limited to those of its principal. Thus, plaintiffs argue, MERS has no power or authority to act as

---

[13] Depending on whether MERS is an agent of the initial lender and its successors in interest, one commentator has suggested that MERS can establish a satisfactory chain of title "by recording a memorandum of the series of assignments from itself as an agent of the original lender to itself as an agent of each successive noteholder." Dunne, 49 Willamette L Rev at 100-01. As explained in our answer to the fourth certified question below, these cases do not furnish an opportunity to decide whether such a course of action would effectively establish the ultimate beneficiary's identity and right to proceed with nonjudicial foreclosure.

an agent of a principal that has divested itself of its interest in a trust deed.

Defendants reply, first, that "legal and equitable rights to property can be separated and held by different parties." It follows, they assert, that the OTDA allows MERS to hold legal title to a trust deed as nominee for the lender, after the note secured by the trust deed is transferred from the lender to a successor or series of successors. Alternatively, defendants argue that MERS has authority as an agent of the original lender and its successors to execute any assignments required or convenient to facilitate the nonjudicial foreclosure process.

Because of the way in which the parties have presented their arguments with respect to the fourth certified question, it is useful to reframe it in two parts. The first part of the question is:

> "Does the Oregon Trust Deed Act allow MERS to hold and transfer legal title to a trust deed as nominee for the lender, after the note secured by the trust deed is transferred from the lender to a successor or series of successors?"

The second part of the question is:

> "If the answer to the first part of the question is 'no,' does MERS nevertheless have authority as an agent for the original lender and its successors in interest to act on their behalves with respect to the nonjudicial foreclosure process?"

For the reasons now explained, the answer to the first part of the question is "no." As discussed, a beneficiary's interest under a trust deed is analogous to a mortgagee's interest under a mortgage. ORS 86.715. Further, a mortgage conveys no legal or equitable interest in fee or for life to the mortgagee, but merely creates a lien that constitutes security for the underlying obligation and grants the mortgagee, upon the mortgagor's default, the right to have the property sold to satisfy the obligation. *See* ORS 86.010; *Stout v. Van Zante*, 109 Or 430, 435-36, 219 P 804, 220 P 414 (1923); *Schleef*, 107 Or at 74-79; *Ukase Inv. Co. v. Smith*, 92

Or 337, 340, 181 P 7 (1919). Although no Oregon case has considered which parties hold legal and equitable interests in the lien embodied in a trust deed in the context of the OTDA, a trustee typically holds legal title to the subject of the trust and the beneficiary holds equitable title.

> "When a trust is created, the legal title is vested in the trustee \*\*\*. 'A trust implies two estates,—one legal, and the other equitable; it also implies that the legal title is held by one person, the trustee, while another person, the *cestui que* trust [the beneficiary], has the beneficial interest.'"

*Morse et al. v. Paulson et al.*, 182 Or 111, 117, 186 P2d 394 (1947) (quoting *Allen v. Hendrick*, 104 Or 202, 223, 206 P 733 (1922)) (emphasis added). ORS 86.705(7) provides that a trust deed is "a deed \*\*\* that conveys an interest in real property to a trustee in trust to secure the performance of an obligation the grantor or other person named in the deed owes to a beneficiary." Under the OTDA, therefore, it is logical to conclude that the trustee holds legal title to the lien conveyed by the trust deed and the beneficiary holds equitable title to that lien. It follows that, because MERS is neither the trustee nor the beneficiary, it holds no interest at all in the lien conveyed by the trust deed.

Relying on this court's decision in *Klamath Irrigation District v. United States*, 348 Or 15, 227 P3d 1145 (2010), defendants remonstrate that "legal and equitable rights to property can be separated and held by different parties." In *Klamath Irrigation District*, several irrigation districts and agricultural landowners brought consolidated suits against the United States, claiming that temporary reductions of irrigation water by a federal agency had breached contracts for the supply of irrigation water from the Klamath River Basin reclamation project, had breached an interstate compact, and had violated the Fifth Amendment by the uncompensated taking of property. In answering certified questions from a federal appeals court, we held that Oregon law recognized distinct legal and equitable interests in the right to use water from the Klamath River Basin that belonged to the irrigation districts and the landowners for

whose benefit the irrigation districts held water rights. *Id.* at 43-44.

Defendants' reliance on *Klamath* is unavailing for two reasons. First, in *Klamath*, this court reiterated the principle that, in determining whether an equitable property right exists, "a court of equity will look beyond the form of the proceeding and if possible consider the substance of the right." *Id.* at 44. As discussed above, any analysis of the substance of the transaction or the actual roles of the parties articulated in the trust deed compels the conclusion that MERS owns neither legal nor equitable title to the lien of the trust deed. Second, although defendants assert that "Oregon law explicitly recognizes that each of the foregoing property interests is capable of further division between holders of legal and equitable title," neither *Klamath* nor any other authority that defendants have identified so holds. Certainly, an equitable interest may be fractionally divided among a number of owners (as this court recognized to be the case among the members of a water district in *Klamath*), but that is not the circumstance with MERS.

Rather, defendants' point seems to be that, even though MERS does not have the right to receive repayment of the notes in these cases, it can nevertheless hold legal title to the trust deeds, including the legal right to foreclose them. That proposition is not correct for two reasons. First, as discussed in detail in our answer to the first and second certified questions, the beneficiary of a trust deed under the OTDA is the lender or the lender's successor in interest as respects the right to repayment. And it is the same beneficiary that has the other statutory rights and obligations that the OTDA confers and imposes, including the power to control the foreclosure decision and process through the right to appoint a successor trustee. Second, as explained in our answer to the first certified question, the policy choice that the OTDA reflects (that the "beneficiary" must be the person entitled to repayment of the secured obligation) is rooted in the common-law principle that a foreclosing party must have the power to enforce the underlying note. *See Holton*, 99 Or at 429. Accordingly, we conclude that the OTDA does not allow MERS to hold or transfer legal title to a trust

deed separately from the right to receive repayment of the obligation that it secures. Because MERS does not have the right to receive repayment of the notes in these cases, the OTDA does not allow MERS to hold and transfer legal title to the trust deeds that secure them.

That conclusion brings us to defendants' and MERS's alternative argument that MERS has authority as an agent of the original beneficiary and any successor beneficiaries of the subject trust deeds to take any steps that are required or convenient to carry out the nonjudicial foreclosure process. The accuracy of that assertion depends on whether MERS qualifies as an agent of those entities for purposes of Oregon law. *See Restatement (Third) of Agency* § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling."). This court has defined agency in the following terms: "[T]o be an 'agent'—using the well-defined legal meaning of that term— two requirements must be met: (1) the individual must be subject to another's control; and (2) the individual must 'act on behalf of' the other person." *Vaughn v. First Transit, Inc.*, 346 Or 128, 136, 206 P3d 181 (2009).

Plaintiffs assert that, even if MERS is an agent of the beneficiaries in these cases, MERS's interests in the trust deeds cannot extend beyond those of the beneficiaries for whom it purports to act, because its powers as an agent cannot exceed those held by its principals. Thus, when the interest of its principal is conveyed, plaintiffs argue, MERS's authority to act for that principal is simultaneously terminated. According to plaintiffs, nothing in Oregon law "supports the idea of freestanding agency on which MERS relies." Moreover, plaintiffs note that at least two other courts recently have agreed with their arguments. For example, the Arkansas Supreme Court has held, under virtually identical statutory language:

> "MERS was at best the agent of the lender. The only recorded document provides notice that [Lender] is the lender and, therefore, MERS's principal. MERS asserts [Lender] is not its principal. Yet no other lender recorded

its interest as an assignee of [Lender]. Permitting an agent such as MERS purports to be to step in and act without a recorded lender directing its action would wreak havoc on notice in this state."

*Mortgage Electronic Registration System, Inc., v. Southwest Homes of Arkansas*, 2009 Ark 152, 301 SW3d 1, 8 (2009).[14] The Supreme Court of Washington recently reached a similar conclusion:

"MERS attempts to sidestep this portion of traditional agency law by pointing to the language in the deeds of trust that describe MERS 'as acting solely as a nominee for Lender and Lender's successors and assigns.' *** But MERS offers no authority for the implicit proposition that the lender's nomination of MERS as a nominee rises to an agency relationship with successive noteholders."

*Bain v. Metropolitan Mortg. Group, Inc*., 175 Wash 2d 83, 107, 285 P3d 34, 45-46 (2012).

Here, plaintiffs allege that their original lenders sold and terminated their respective interests in the trust deeds and underlying promissory notes shortly after the origination of plaintiffs' loans. More to the point, they allege that those original lenders transferred their interests in their promissory notes and trust deeds (followed by multiple subsequent transfers as well) long before MERS executed or recorded an assignment of the trust deeds to the purported ultimate successors in interest of the original lenders. In each of the cases, the plaintiffs assert "that the promissory note was sold and the trust deed was assigned from the originating lender of each respective loan through a series of subsequent intervening purchasers until it was purportedly conveyed to the current party on whose behalf each of the nonjudicial foreclosures was being conducted." In particular, plaintiffs assert that "their loans were sold first to a separate entity known as a Sponsor, which subsequently sold the promissory note and assigned the trust deed to an entity known as a Depositor, which subsequently sold the

---

[14] Under the Arkansas statute, "beneficiary" means "the person named or otherwise designated in a deed of trust as the person for whose benefit a deed of trust is given or his successor in interest" Ark. Code Ann. § 18-50-101(1) (2010).

promissory note and assigned the trust deed to Defendant, Bank of New York Mellon FKA The Bank of New York, ("BNYM") as Trustee for the respective securitized trusts of which BNYM acts as Trustee."

As an initial matter, it is worth noting that, in each case, it is MERS itself, not MERS as "nominee" for the actual beneficiary, that executed a written assignment of the trust deed to the reputed ultimate successor of the original lender and recorded that assignment in the pertinent real property records. Because MERS does not qualify as the beneficiary, an assignment in such capacity is invalid. *See* ORS 86.705(2); ORS 86.735(1). But, assuming, as it asserts, that MERS also acts as an agent or nominee for the original beneficiary and successor beneficiaries, a different set of rules applies.[15]

In Oregon, agency is "[t]he relationship which results from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act." *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 617, 892 P2d 683, 694 (1995) (quoting *Ruddy v. Ore. Auto. Credit Corp.*, 179 Or 688, 702, 174 P2d 603, 609 (1946)) (internal quotations omitted). The principal-agent relationship is defined by, among other things, the ongoing ability of the principal to maintain control over the agent by giving the agent instructions. *See Vaughn*, 346 Or at 136 (quoting *Restatement (Third) of Agency* § 1.01 comment f (2006)).

Defendants assert that, even where multiple trust deed transfers have occurred, MERS has ongoing authority to act for its past and present principals under the MERS system. MERS explains that,

---

[15] In their arguments to this court, defendants at times refer to MERS as lender's "agent," and at other times as lender's "nominee" (the status MERS is accorded in the trust deeds). Although the distinction is far from clear, there is some basis for concluding that the authority of a nominee *vis-à-vis* its principal can be more limited than that of an ordinary agent. In that regard, we observe that *Black's Law Dictionary* defines a "nominee," as "2. A person designated to act in place of another, usu. in a very limited way[;] 3. A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Black's Law Dictionary* 1076 (8th ed 2004). It may be, however, that MERS and its members understood the word as a synonym for "agent." The record before us does not illuminate that issue.

"[w]hen MERS executes an assignment of the trust deed, it is doing so as nominee agent of the then-note owner. Plaintiffs and *amicus* OTLA wrongly view MERS as acting on behalf of the former principal, the original lender. Agency principles permit MERS to serve as a common agent of the original lender and all successors and assigns, and all parties to the trust deed—including the borrower— acknowledge that MERS will do this. Accordingly, when MERS executes a written assignment of 'all beneficial interest under that certain Deed of Trust[,]' it is acting on behalf of the current owner of equitable title to the beneficial interests under the trust."

Similarly, *amicus* Oregon Land Title Association asserts:

"Finally, as to the answer on the fourth certified question, MERS has authority to retain and transfer legal title to a trust deed after a transfer of the underlying promissory note as long as the lender's successors and assigns also are members of MERS. In such circumstances, the lender's successors and assigns have given MERS the requisite authority to act on their behalf. Thus, as long as MERS remains constant as a nominee holding legal title to the trust deed for the lender and any successors or assigns, MERS has authority to transfer legal title to the trust deed."

According to defendants and MERS, courts examining the issue recognize that MERS's role as nominee or agent carries forward to subsequent obligees—indeed, defendants assert, that was one of the very purposes for the creation of MERS.[16] Those propositions notwithstanding, the difficulty is that, on the record before us, it is unclear whether such a broad common agency relationship exists in these cases among MERS and the original lenders and their

---

[16] *See In re Tucker*, 441 BR 638, 646 (Bankr. WD Mo 2010) ("MERS was the agent for New Century under the Deed of Trust from the inception, and MERS became agent for each subsequent note-holder under the Deed of Trust ***."); *Kiah v. Aurora Loan Services*, LLC, 2011 WL 841282 at 4 (D Mass 2011) ("dissolution of [lender] would not and could not prevent [note holder] from obtaining an assignment of the mortgage from MERS, both as a matter of law and according to the arrangement that existed between MERS and Aurora as a 'successor and assign'"); *MERSCORP, Inc. v. Romaine*, 861 NE2d 81, 83 (NY 2006) ("Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system."); *see also Restatement (Third) of Agency* § 1.04 (an agent may act on behalf of both a disclosed principal, *i.e.*, the original lender, and a later unidentified principal, *i.e.* original lender's successor and assign).

successors in interest. The trust deeds, by themselves, do not establish the necessary relationship; they instead confuse the issue by first granting MERS the seemingly-narrow status of a "nominee" and then purporting to grant MERS authority to "exercise" other "interests" if "necessary." More importantly, although the trust deeds are signed by the borrowers, the original lenders and their successors, who are the other parties under defendants' theory of "common agency," are not signatories. Accordingly, the answer to the second part of the fourth question depends, in large measure, on evidence with respect to who ultimately holds the relevant interests in the notes and trust deeds, and whether that person and each of its predecessors in interest conferred authority on MERS to act on their behalves in the necessary respects. And that evidence is not present in the record before us.

The answers to the two parts of the fourth certified question thus may be stated in the following terms:

(4)(a)  "Does the Oregon Trust Deed Act allow MERS to hold and transfer legal title to a trust deed as nominee for the lender, after the note secured by the trust deed is transferred from the lender to a successor or series of successors?"

Answer: "No." For purposes of the OTDA, the only pertinent interests in the trust deed are the beneficial interest of the beneficiary and the legal interest of the trustee. MERS holds neither of those interests in these cases, and therefore, it cannot hold or transfer legal title to the trust deed. For purposes of our answer to the first part of the fourth certified question, it is immaterial whether the note secured by the trust deed has previously been "transferred from the lender to a successor or series of successors."

(4)(b)  "Does MERS nevertheless have authority as an agent for the original lender and its successors in interest to act on their behalves with respect to the nonjudicial foreclosure process?"

Answer:  The power to transfer the beneficial interest in a trust deed or to foreclose it follows the beneficial interest in

the trust deed. The beneficiary or its successor in interest holds those rights. MERS's authority, if any, to perform any act in the foreclosure process therefore must derive from the original beneficiary and its successors in interest. We are unable to determine the existence, scope, or extent of any such authority on the record before us.

Certified questions answered.

**KISTLER, J.,** concurring in part and dissenting in part.

The United States District Court for the District of Oregon has certified four state law questions to this court. In answering the first two questions, the majority concludes that only the lender and its successors can be designated as the beneficiary on a trust deed. In answering the last two questions, the majority concludes that not every assignment of the lender's interest in the trust deed must be recorded and that Mortgage Electronic Recording Systems, Inc. (MERS) can serve as the agent for both the lender and its successors if the record shows that those entities agreed to that arrangement. I agree with the majority's answers to the last two questions but would answer the first two questions differently. In my view, nothing in state law precludes the parties to a trust deed from designating MERS as the beneficiary as long as MERS is serving as the agent for the lender and its successors.[1]

Bart and Jessica Brandrup executed a trust deed on their property to secure a debt evidenced by a note that they gave their lender, America's Wholesale Lender. In their trust deed, the Brandrups designated MERS "acting solely as a nominee for Lender and Lender's successors and assigns" as the "beneficiary under this Security Instrument." The issue that the first two certified questions pose is whether state law required the Brandrups to designate America's Wholesale Lender as the beneficiary rather than MERS acting as the nominee or agent for the lender and its successors.[2]

---

[1] In referring to the lender's successors, I am referring to those successors in interest that are entitled to enforce the obligation that the trust deed secures.

[2] As the majority notes, a nominee is a limited agent. See 353 Or at 707 n 15.

The majority finds a complete answer to that issue in the definition of "beneficiary" in the Oregon Trust Deed Act. *See* ORS 86.705(2). That Act authorizes a borrower to grant a trust deed on real property to secure an underlying obligation[3] and, in a definitional section, provides that "'[b]eneficiary' means a person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest * * *." *Id.* As the majority observes, a trust deed secures an obligation, frequently evidenced by a promissory note, and the lender and its successors are the persons for whose benefit the trust deed is given; that is, the trust deed is given to secure the obligation that the grantor of the trust deed owes the lender. That much is unexceptional.

It is one thing, however, to say that the statutory definition identifies the lender and its successors as the persons who ordinarily will be the beneficiaries of the trust deed. It is quite another to find in that definition a legislative intent to preclude the parties to a trust deed from designating the agent of the lender and its successors as the beneficiary. We should be hesitant to find in that run-of-the-mill definition a limitation on the parties' customary authority to structure their transactions as they see fit, unless the text, context, or history of that definition requires it. In my view, the statutory definition of beneficiary serves a more modest role than the one the majority assigns it. Certainly, nothing in the text of the definition expressly forecloses the parties from designating the lender's agent as the beneficiary in the trust deed. Nor does the legislative history lend any support for the majority's conclusion. Rather, the legislative history shows only that, in authorizing the use of trust deeds, the legislature sought to provide a more cost-effective means of foreclosing liens on real property and, in doing so, to expand the pool of capital available for small homeowners. *See* Minutes, House Committee on Judiciary, SB 117, Apr 16, 1959, at 1. It is difficult to derive from that history any

---

[3] Essentially, a trust deed is a mortgage with the power of sale. A trust deed differs from a mortgage primarily in that it conveys an interest in real property to a trustee to secure an obligation owed the beneficiary, *see* ORS 86.705(7), and, in the event of the grantor's default, authorizes the trustee to conduct a nonjudicial foreclosure sale on behalf of the beneficiary, *see* ORS 86.710.

legislative intent to limit the parties' ability to designate the lender's agent as the beneficiary.

To be sure, the context provides a limitation on the persons whom the parties may designate as the beneficiary. As noted, a trust deed, like a mortgage, serves as security for the underlying obligation—in this case, a promissory note. Ordinarily, the mortgage follows the note. *See Restatement (Third) of Property: Mortgages* § 5.4(a) (1997) ("A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."). Moreover, "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures." *Id.* § 5.4(c). Put differently, "in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation." *Id.* § 5.4 comment e. One exception to that general rule occurs when the person who holds the mortgage does so as the "trustee or agent" of the person who has the right to enforce the obligation secured by the mortgage. *Id.* In that circumstance, the trustee or agent may enforce the mortgage on behalf of the lender and its successors.

On the one hand, that context suggests that the authority to name or otherwise designate the beneficiary does not extend to naming a person whose designation would render the trust deed unenforceable and thus defeat its purpose. *See id.* (noting that "in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation"). On the other hand, that context suggests that the class of persons statutorily authorized to be "named or otherwise designated in [the] trust deed" as the beneficiary is not limited to the lender and its successors, as the majority concludes. Rather, it extends to persons (agents and trustees) who also may enforce the mortgage on behalf of the lender and its successors. Accordingly, I would hold that the statutory definition of beneficiary is broad enough to permit the parties to a trust deed to designate MERS as the beneficiary as long as MERS is the nominee or agent of the lender and its successors in interest.[4]

_____

[4] The terms of the trust deed could be much clearer about the role that MERS plays. However, defendant argues that, under the terms of the trust deed, MERS

Ultimately, the difference between my answer and the majority's answer may be more semantic than substantive. After all, in answering the fourth question, the majority recognizes that, in theory, MERS can serve as the agent for the lender and its successors. The problem, as the majority correctly observes, with applying that theory in this case is that the record does not disclose whether the lender's successors in interest also have authorized MERS to act as their agent. As I understand the majority's answers, they effectively lead to the same conclusion that I would reach. However, because I would answer the first two certified questions differently from the majority, I dissent in part and concur in part in its answers.

Balmer, C. J., joins in this opinion concurring in part and dissenting in part.

---

serves as the agent for the lender and its successors, and the terms of the trust deed permit that understanding.