Argued April 9, affirmed April 23, 1952

LANCASTER *v.* MAY, as Administrator

243 P. 2d 268

*Ross Farnham,* of Bend, argued the cause and filed a brief for appellant.

*George H. Brewster,* of Redmond, argued the cause for respondent. On the brief were Cunning & Brewster, and George Rakestraw, of Redmond.

Before BRAND, Chief Justice, and HAY, LUSK, WARNER and TOOZE, Justices.

TOOZE, J.

This suit was instituted by the filing of a complaint in the circuit court for Deschutes county, wherein Agnes Pearl Lancaster is named as plaintiff, and Charles Marsch, as defendant. By her complaint plaintiff prayed a decree as follows; to-wit: requiring defendant Charles Marsch to deliver up and surrender to plaintiff a deed of conveyance dated October 6, 1947, wherein plaintiff was grantor and one Lewis M. Lancaster was grantee; or in the event that said deed not be delivered up to plaintiff, that the court order the same to be cancelled and to be declared null and void.

Defendant Marsch answered the complaint, admitting possession of the deed in question. He alleged that not only plaintiff had demanded possession of said deed, but also the children and heirs at law of Lewis M. Lancaster, deceased, and Earle May, as administrator of the estate of Lewis M. Lancaster, deceased. Defendant further alleged that he had refused to deliver the deed to either of the parties making such demand, advising them that he did not know nor wish to decide who was entitled to have said deed, and that said deed would be delivered only in response to an order of the court. He tendered the deed into court with his answer, along with another deed to be hereafter mentioned, with a request that the court decide to whom the instruments belonged. He prayed a decree that the suit be dismissed as to him, and that plaintiff be required to plead Earle May, the administrator of the estate of Lewis M. Lancaster, deceased, as a defendant herein.

Earle May, as such administrator, was joined as a defendant and filed an answer to the complaint, ad-

mitting and denying certain allegations thereof and affirmatively pleading facts which he maintained entitled him to possession of said deeds as the administrator of said estate. Plaintiff filed her reply denying the affirmative allegations of May's answer and, for a further and separate reply, alleged a certain state of facts which she claimed entitled her to the relief prayed for in her complaint.

The trial court found the issues in favor of plaintiff and entered a decree directing the clerk of the court to deliver said deed to plaintiff and decreeing the same to be null and void and of no force and effect. Defendant Earle May, as administrator, appeals.

This litigation arises out of the following facts: Prior to October, 1947, Lewis M. Lancaster was the owner of the north half of block numbered one hundred (100), first addition to Bend Park, in the city of Bend, Deschutes county, Oregon, valued at $12,500. Lancaster had been married and had two daughters, the issue of such marriage. In a bitterly contested suit a divorce had been obtained dissolving the marriage, in which suit the daughters had taken the part of their mother. Much bitterness obtained between Lancaster and his daughters; and to his attorney Charles Marsch, he made the statement that he did not want them to ever receive any part of his property. Lancaster had become acquainted with plaintiff, and after his divorce they contemplated marriage with each other. The two parties had some discussion about the above described real property during the month of September, 1947. At that time Lancaster was living in the home of plaintiff's married daughter. Plaintiff had been placed in possession of the real property

mentioned and was conducting dancing classes in the dwelling located thereon.

According to plaintiff, in September, 1947, Lancaster expressed a desire that she should have the real property described and agreed to deed it to her in consideration of their impending marriage. It was also agreed that she should execute a deed to the property back to Lancaster, this deed to be delivered on condition only if the marriage was not consummated or if she should predecease Lancaster; it being agreed, however, that after consummation of the marriage, a new deed would be given by plaintiff, creating a tenancy by the entirety, so that the survivor would take the whole of said premises.

Lancaster directed his attorney Charles Marsch to prepare two quitclaim deeds describing the property, the first naming Lewis M. Lancaster as grantor and plaintiff as grantee, and the other naming plaintiff as grantor and Lancaster as grantee. The deeds were so prepared and on October 6, 1947, were executed by the respective parties. Marsch was directed by Lancaster to place U. S. Revenue stamps upon the deed conveying the premises to plaintiff and to have the same duly recorded. The stated consideration in the deed was $10, but Marsch caused to be attached thereto and cancelled U. S. Revenue stamps in the total sum of $13.20. This deed was duly recorded on October 6, 1947.

According to Marsch, no instructions whatever were given him respecting the deed from plaintiff to Lancaster, that being the deed principally involved in this litigation. This deed was left in his possession, and, after the other deed had been recorded, he took possession of it and kept both deeds in the Lewis M.

Lancaster file in his office. Marsch was not only Lancaster's attorney, but they had been close friends for several years. Plaintiff testified that, with respect to the deed transactions, Marsch was also her attorney.

Plaintiff and Lancaster were duly married on January 2, 1948. Thereafter, upon several occasions, according to plaintiff and Marsch, there was talk about the execution of a further deed. As to this, Marsch testified:

"Q Do you recall having any discussion or any mention made to either one or both of the parties after the marriage about these deeds?

"A Yes, I am sure of that fact. I have a distinct recollection that the deeds were mentioned to Mr. Lancaster after that marriage, and maybe several times, and possibly it may have been mentioned in the presence of Mrs. Lancaster—I just don't know now.

"Q Was there anything said then as to what further there was to be done about the deeds?

"A The exchange or execution of the deeds was accepted in my mind as a temporary expedient until the marriage was consummated, and after the marriage had been consummated—the marriage first— and then there was something further to be done. It. was my impression that they wanted another deed to create an estate by entirety."

As to this matter, plaintiff testified:

"Q * * * Did Mr. Lancaster and you ever have any conversations with Mr. Marsch after that, both of you together?

"A Yes, sir.

"Q Where?

"A Oh, we would meet him on the street.

"Q What was the conversation?

"A Well, the mention would be made of this other deed and Mr. Marsch would remind Mr. Lan-

caster that we should have it attended to, maybe next week.

"Q What was that deed that had to be attended to?

"A That was our joint deed.

"Q What do you mean by that?

"A. Well, after our marriage, we were going to have a joint deed made in both of our names.

"Q You mean a deed where the property stood in both your names as husband and wife?

"A That is right.

"Q Did you have any agreement as to that?

"A Yes, sir.

"Q Who with?

"A Between ourselves and Mr. Marsch.

"Q That is what I want to know—did you make another agreement and who with?

"A With Mr. Lancaster.

"Q Was that agreement between you and Mr. Lancaster?

"A Yes, sir."

Lancaster died in July, 1948, without any further deed having been executed so as to create a tenancy by the entirety as agreed upon.

■ It is a well-established rule of law that delivery is an indispensable requisite to the validity of a deed. To pass title, the grantor must give up dominion and control of the deed. The delivery must be made by the consent or with the acquiescence of the grantor. To be effective, such delivery must be unconditional. It is not necessary, however, that the delivery be made to the grantee personally. To constitute a complete delivery, there must, of course, be acceptance by the grantee. Whether there has been a delivery is a question of fact rather than of law, depending

upon the intent of the grantor to vest an estate in the grantee. *O'Connell v. O'Connell,* 162 Or 411, 91 P2d 1107; *Jobse v. U. S. Nat. Bank,* 142 Or 692, 21 P2d 221; 26 CJS, Deeds, 231, § 40.

 It is also a well-established rule of law that the delivery of a deed for record, with unqualified instructions to record it, will raise the presumption in the absence of any rebutting circumstances that the grantor intends to part with his title. Moreover, a deed duly executed, acknowledged, and recorded is prima facie evidence of its acceptance by the grantee, at least where a beneficial interest is conferred. But if such recording be without the consent, actual or implied, of the grantee, it will not constitute a delivery. *State of Oregon v. Hyde,* 88 Or 1, 13, 169 P 757, 171 P 582; *First Nat. Bank v. McCreary,* 66 Or 484, 490, 132 P 718, 134 P 1180; *Bogard v. Barhan,* 56 Or 269, 276, 108 P 214; *Russell v. May,* 77 Ark 89, 90 SW 617; *Turner v. Close,* 125 Kan 485, 264 P 1047; 26 CJS, Deeds, 598, § 187.

In *Russell v. May,* supra, at page 93, the rules applicable are stated as follows:

"* * * The recording was *prima facie* evidence of delivery * * *. * * *

"An acceptance of the deed by the grantee is also essential to its validity. If it is beneficial to the grantee, and imposes upon him no burdens, an acceptance may be inferred. If it be executed in pursuance of a previous understanding with the grantee, and is beneficial to him, an acceptance is presumed. * * *"

 Tested by the foregoing rules of law, it is clear that there was a delivery of the deed to plaintiff, which conveyed to her the title to the real property in question. The deed was executed pursuant to a previous

understanding plaintiff had with the grantor, and it was recorded with her full knowledge and consent, and by express direction of the grantor. The grantor imposed no restrictions or conditions whatever upon the recording or the delivery. He had expressed the desire that plaintiff have the property in question and, even prior to the execution of the deed, had placed her in possession of the premises. Further, grantor had removed therefrom, taking up his residence in the home of plaintiff's daughter, where presumably he remained until his marriage with plaintiff. The record wholly fails to disclose any evidence whatever that might tend to rebut the legal presumptions arising from the execution, acknowledgment, and recording of the deed in question.

In lieu of evidence to establish his position, defendant would substitute a mere speculative theory that the execution of the deed by Lancaster was a mere sham, carried out to serve some ulterior and undisclosed motive and purpose of his own. In the face of the record we are not permitted to speculate. Upon the execution and recording of this deed, title to the land passed to plaintiff, and still resides in her.

▮▮▮▮ As to the deed which is the subject matter of this suit, it is obvious that it conveyed no title; there was no delivery. The evidence supports the conclusion that no delivery was intended except upon the happening of either one of two contingencies, neither of which occurred. As before observed, attorney Marsch was given no instructions respecting this deed, except to hold it. He testified:

"Q There wasn't anything said by Mr. Lancaster about what to do with the second deed at that time, was there?
"A At that time, I believe not.

"Q Or at any other time—you never received any instructions about it?

"A I can't recall exactly now. He and I did have an understanding, I believe, that I was to hold the deeds so far as I was personally concerned. That is my immediate recollection.

"Q And you didn't have any instructions except to hold it:

"A That is right, yes."

Defendant seeks to invoke the statute of frauds against plaintiff in this case. Section 2-909, OCLA, in part provides:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law:

"* * * * * *

"(4) An agreement made upon consideration of marriage, other than a mutual promise to marry;

"* * * * * *."

■ The statute of frauds is not applicable. Plaintiff is not seeking to specifically enforce an oral agreement made upon consideration of marriage. We are dealing with a completed transaction, with title passing to plaintiff by the deed.

■ Upon conclusion of the evidence, plaintiff requested and obtained permission of the court to amend paragraph V of her amended reply to accord with the proof. Defendant contends the trial court erred in allowing this amendment. The court enjoys a broad discretion in permitting pleadings to be amended to

accord with the proof, and its action in that respect will not be disturbed on appeal unless it is manifest that there has been an abuse of discretion. We find no such abuse of discretion in this case.

■ The evidence in this case fully supports the decree of the trial court.

Decree affirmed. Neither party to recover costs.