Argued September 8, reversed November 3, petition for rehearing
denied December 22, 1954

## BURSELL, Adm'x *v.* BRUSCO et al.

275 P. 2d 873

*Verne W. Newcomb* argued the cause for appellants.
With him on the briefs were Sabin and Malarkey, Alton
John Bassett and Ell M. Roston, of Portland.

*Francis F. Yunker* argued the cause for respondent.

On the briefs were Yunker, Fewless & Hannam, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK and BRAND, Justices.

WARNER, J.

This suit was brought by the plaintiff Giacomo Brusco, sometimes known as Jim Brusco, against his sons Mike and Emanuel Brusco and their respective spouses for the cancellation of a deed recorded May 27, 1941, wherein plaintiff was grantor and defendants were grantees, and for a further decree that plaintiff was the sole owner of the property free and clear of any claim of the defendants. Plaintiff died on or about June 1, 1953, during the pendency of this appeal. He was then 82 years of age. Helen Bursell, as the administratrix of his estate, was substituted in his stead. From a decree in favor of plaintiff, the defendants appeal.

Since sometime in 1909, plaintiff had been the sole owner of four lots in Portland, Oregon. He alleges in his complaint that on May 27, 1941, he attempted to convey the property to the defendant sons and their respective wives, giving each son and his wife an undivided interest by the entireties but reserving a life estate for himself. The deed provided that the grantees would pay all taxes "heretofore or hereafter levied or assessed against said four lots" and that by the acceptance of the deed the defendant sons agreed to support the grantor, their father, "to the extent and under the circumstances as provided by law."

As a basis for the relief prayed for, plaintiff alleged in substance the failure of the grantees to comply with the provisions of the deed in the following par-

ticulars: (1) to support the grantor; (2) to pay taxes assessed against the property; and (3) to suffer grantor to enjoy undisturbed the privileges and benefits of his life estate without intrusion of grantees. The most serious question presented to us by this appeal is to determine whether or not plaintiff had any title to convey on May 27, 1941.

Multnomah county foreclosed a lien for delinquent taxes against plaintiff's property by a decree dated May 18, 1940. The county became the purchaser and thereafter held the property subject to the owner's right of redemption for a period of one year from and after the date of that decree. ORS 312.120. In the instant matter this would be May 18, 1941.

ORS 312.200 (§ 110-917, OCLA) provides that "properties not redeemed within the one year period prescribed by ORS 312.120 shall be deeded to the county by the tax collector" and that "All rights of redemption, with respect to the real properties therein described, shall terminate on the execution of the deed to the county."

■ Just how soon after May 18, 1941, the sheriff executed the deed required by ORS 312.200 we do not know. However, the exact date of the execution and delivery of the deed from the sheriff to the county becomes an item of secondary importance in this matter, for we are satisfied from the record that the deed from the sheriff to the county was delivered before May 27, 1941, and that plaintiff's rights to redeem the property and all his right, title and interest therein were extinguished prior to May 27.

What, if anything, did plaintiff have to convey at the time of the delivery of his deed? The deed was dated May 9, 1941, and acknowledged before Karl Herbring as notary public on the same date. The

record is utterly silent on what happened to the deed between May 9 and May 27, the date of recording. There is nothing to contradict the testimony of the defendant sons that their first knowledge of the deed in its form as recorded was when it was received in the mail at the home of Emanuel Brusco on or about June 3, 1941, addressed to both defendants and where it had apparently been sent by the county clerk after recording. Who caused the deed to be recorded, who paid the recording fee or who gave directions to mail it to the address of Emanuel we do not know and none of the parties has made any serious attempt to supply these details.

■ Delivery and acceptance as alleged by plaintiff were not proved. The presumption of delivery arising from recording the instrument is not applicable here. See *Lancaster v. May, as Administrator,* 194 Or 647, 655, 243 P2d 268, where we said, "* * * if such recording be without the consent, actual or implied, of the grantee, it will not constitute a delivery."

We do not need to concern ourselves with the technical status of the delivery and acceptance of this deed. It is sufficient, for the purposes of this opinion, that we adopt plaintiff's own timing of the alleged transfer of title from him to his sons. That is established by his complaint where he says, "That on the 27th day of May, 1941 * * * plaintiff conveyed the said real property to these defendants." This date of attempted conveyance, corresponding as it does with the date of the recording, is the most significant moment of time in this matter because on that date the plaintiff had nothing to convey. The year's period for redemption had expired and, with the delivery of the sheriff's deed to the county as provided by ORS 312.200, the plaintiff no longer had any interest to convey. The father's

deed on May 27, 1941, was a nullity, whether or not there was a delivery and acceptance. The grantees acquired no estate thereby and, there being no consideration to support the covenant respecting the payment of taxes and no title to which to append the condition relating to the old gentleman's support, these salutary features for the benefit of the father failed insofar as they were obligations springing from the deed of their father recorded May 27.

Unfortunately, neither party made any serious effort to establish with certainty many dates of decisive character. Some of them would have been of great importance and assistance in determining more surely the rights of the respective parties.

Apparently, the plaintiff was in the habit of consulting The Honorable James Bain, then district attorney for Multnomah county and for several years past and now a judge of the circuit court for that county. Evidently, plaintiff solicited his advice from time to time on both civil and criminal problems, real and imaginary, arising out of his differences with his sons. We interpolate here to say that for many years prior to 1941, the defendant sons were their father's sole source of support. It was they who paid most of the taxes for the years prior to 1939 on the premises which are the subject of this litigation. Their voluntary contributions in this respect began many years before 1941. From a none too clear record, we gather that on two occasions in particular, Judge Bain, while district attorney, acted as a friendly and kindly moderator in the family arguments of the Bruscos. It would appear that one of these times was on or before May 9, 1941, when he advised them to go to some lawyer to have a deed or other instrument drawn which would insure a redemption of plaintiff's property by the two sons

from the tax foreclosure of 1940, and at the same time protect the sons for all monies advanced by them for back or future taxes.

There is absolutely nothing to indicate, nor is any claim made, that prior to May 27, or at any time subsequent thereto, the plaintiff and his sons had agreed upon any formula for the redemption of plaintiff's property from the foreclosure sale. The plaintiff does not remotely suggest that the pattern of the deed recorded on May 27 was the implementation of any previously-made agreement negotiated by and between the grantor and grantees.

The last conference referred to in the record, had between plaintiff and his sons before May 27, for the purpose of working out a formula to save Mr. Brusco's homeplace, was in the office of Mr. Herbring, a member of the Oregon Bar. Mr. Brusco and his sons apparently went there at the suggestion of Judge Bain and probably on or before May 9, 1941 (the date of the execution and acknowledgment of Brusco's deed). Whether it was the father or the sons who initially retained Mr. Herbring is unknown. The record discloses that when there Mr. Herbring tendered an instrument unsatisfactory in form to the sons and to their father. What was there said and done between the Bruscos is not fully disclosed, but apparently it was attended with some show of acrimony and stubbornness on the part of the Bruscos which prompted Mr. Herbring to tell one or all of them, "I will not be your attorney." If the brothers are to be believed, the deed recorded on the 27th was drawn and executed sometime after they left Herbring's office. It would have been an easy matter for the interested parties to have called Herbring as a witness if the representations concerning what happened in his office are not true.

The next meeting with Judge Bain was sometime after May 27. We so say because the recorded deed or copies thereof were exhibited to Bain. The plaintiff and his sons were present. Plaintiff had gone there to importune Judge Bain's help in securing larger amounts of support money from the Brusco boys. Judge Bain called in the sons. Here again we are confronted with a vague account of a conference between the parties and their friend Bain, which could and should have been clarified by calling Judge Bain to the stand. From the confusing testimony of the Bruscos concerning this conference, we garner that the matter of the tax foreclosure was also discussed, and it then became apparent to all of them, evidently for the first time, that saving the father's homeplace required immediate action, as in fact it did. The redemption period having passed, Judge Bain, according to the testimony, advised them to negotiate immediately for a repurchase of the property under the provisions of ORS 312.120. Indeed, according to the uncontradicted testimony, Judge Bain in their behalf called at that very time the Multnomah County Land Office (a county agency handling the resale of properties acquired by the county on tax foreclosures). From Bain's office the Brusco brothers went directly to the land office in the courthouse. Whether their father went with them to that office, then or any other time, is not shown by the record. What negotiations were then had we do not know, nor do we know whether this was on or preliminary to August 4, 1941, the date of the repurchase contract executed by the defendant sons and their spouses.

Upon completion of the payments required by the repurchase contract, Multnomah county in May 1942 delivered its deed to the defendant brothers and their wives. It is under this deed that the Brusco brothers

claim title. We are satisfied that their title to the premises is derived through the county deed issued pursuant to the repurchase contract and not under the ineffectual deed of their father, as we have noted above.

Under the circumstances, there was no deed for this court to cancel, even if any of the various reasons which plaintiff advanced for cancellation were found tenable.

We shall not laden this opinion with a more extended statement, but we are satisfied that in terms of the law governing the right to cancellation and the facts as disclosed at the trial, a decree of cancellation would not have been warranted, even if it might be said that Mr. Brusco's deed to his sons was an effective conveyance of title as contended by plaintiff.

The decree is reversed and the suit dismissed. Parties will pay their own costs.