94

Argued and submitted August 5, 2014, reversed and remanded July 1, 2015

Scott M. HUCKE,
*Plaintiff-Respondent,*

*v.*

BAC HOME LOANS SERVICING, L.P.;
Recontrust Company, N.A.; and
IBM Lender Business Process Services,
*Defendants,*

*and*

FEDERAL NATIONAL MORTGAGE ASSOCIATION;
and Mortgage Electronic Registration Systems, Inc.,
*Defendants-Appellants.*

Multnomah County Circuit Court
110709486; A153582

355 P3d 154

John M. Thomas argued the cause for appellants. With him on the briefs was RCO Legal, P.S.

Jeffrey A. Myers argued the cause and filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.*

SERCOMBE, P. J.

---

* Tookey, J., *vice* Haselton, C. J.

**SERCOMBE, P. J.**

Plaintiff brought this action against defendants, Federal National Mortgage Association (Fannie Mae) and Mortgage Electronic Registration Systems, Inc. (MERS), alleging that they failed to comply with the Oregon Trust Deed Act (OTDA)[1] when they participated in the nonjudicial foreclosure of a trust deed through which plaintiff held an interest in property. Among other things, plaintiff claimed that, when the original trust deed beneficiary assigned its interest to Fannie Mae by delivering the underlying promissory note to Fannie Mae, Fannie Mae failed to satisfy a condition for nonjudicial foreclosure in *former* ORS 86.735(1) (2011), *renumbered as* ORS 86.752(1) (2013)—that "any assignments of the trust deed by the * * * beneficiary * * * [be] recorded." After a bench trial, the trial court agreed, relying on our decision in *Niday v. GMAC Mortgage, LLC*, 251 Or App 278, 284 P3d 1157 (2012), and, accordingly, declared the nonjudicial foreclosure sale void, reinstated the trust deed and promissory note, restored the parties to the *status quo ante* that existed prior to the sale, and awarded plaintiff attorney fees and costs.

Defendants appeal and, along with several other assignments of error, initially argue that the trial court should have dismissed plaintiff's claims before trial because they became moot when Fannie Mae recorded a correction of errors deed under ORS 86.722(1), which, in defendants' view, had the effect of unwinding the foreclosure sale and restoring plaintiff's interest under the trust deed. Defendants further argue that the trial court's decision is wrong on the merits under the Supreme Court's recent decisions in *Niday v. GMAC Mortgage, LLC*, 353 Or 648, 661, 302 P3d 444 (2013), and *Brandrup v. ReconTrust Co.*, 353 Or 668, 699, 303 P3d 301 (2013), which explained that *former* ORS 86.735(1) does not require that assignments resulting from the transfer of a promissory note be recorded before a nonjudicial foreclosure can proceed. As explained below, we reject defendants' arguments that plaintiff's claims should

---

[1] Some of the statutes of the OTDA were renumbered in 2013, and we refer to the statutes in effect at the time of the foreclosure in this case. At that time, the OTDA encompassed ORS 86.705 to *former* ORS 86.795 (2011), *renumbered as* ORS 86.809 (2013).

have been dismissed as moot, but we agree with defendants that the trial court's ruling in plaintiff's favor was error under *Niday* and *Brandrup* and reverse and remand the trial court's judgment on that basis.

The facts are undisputed. In August 2007, plaintiff obtained a loan from GreenPoint Mortgage Funding, Inc. (GreenPoint), evidenced by a note. As security for repayment of the note, plaintiff pledged real property in Portland, Oregon. The trust deed securing the loan to the property named plaintiff as borrower, GreenPoint as lender, and Fidelity National Title Company (Fidelity) as trustee. MERS was identified as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" and as "the beneficiary under this Security Instrument." (Emphasis omitted.) The trust deed was recorded in the public records of Multnomah County.

GreenPoint later sold the loan to Fannie Mae (by endorsing the note in blank and delivering it to Fannie Mae), and Fannie Mae became the note holder.

In January 2011, MERS executed an assignment of the trust deed to Fannie Mae, which was recorded in Multnomah County, and Fannie Mae appointed ReconTrust as successor trustee by recorded document. That same month, ReconTrust recorded a notice of default and election to sell, stating that, in February 2010, plaintiff had stopped making monthly payments on the note, violating the terms of the trust deed.

In July 2011, ReconTrust recorded a trustee's notice of sale, along with other notices. The notice of sale referred to "that certain Trust Deed made by [plaintiff], as grantor[], to [Fidelity], as Trustee, in favor of [MERS], as Beneficiary," and listed details of the trust deed's recording. The notice explained that "the words 'Trustee' and 'Beneficiary' include their respective successors in interest, if any." Elsewhere in the notice of sale, ReconTrust is identified as the Trustee; the notice does not identify any beneficiary other than MERS.

In July 2011, ReconTrust sold the property at a nonjudicial foreclosure sale. The highest bidder at the auction was Fannie Mae, and ReconTrust executed a trustee's

deed to Fannie Mae that same day. The trustee's deed was recorded a few days later.

Plaintiff filed this action against defendants.[2] He sought a declaratory judgment that the completed foreclosure sale was invalid because (1) MERS was not a "beneficiary" under ORS 86.705,[3] and thus did not have the power to assign the deed of trust to Fannie Mae in the capacity of either a beneficiary or an agent for the beneficiary; and (2) all assignments of the deed of trust had not been recorded as required by *former* ORS 86.735.

In August 2012, about a month before trial, Fannie Mae recorded a correction of errors deed (the correction deed), which provided:

"CORRECTION OF ERROR(S)
"IN THE DEED AND MORTGAGE RECORDS
"RELATING TO A TRUST DEED
"(ORS 86.705 to 86.795)

"This instrument is recorded to provide notice of an error relating to:

"Original Deed of Trust
"County clerk instrument record #:    2007-154995
"Grantor:    [plaintiff]
"Trustee:    [Fidelity]
"Successor Trustee:    [ReconTrust], [address], Instrument No. 2011-013283
"Beneficiary:    [MERS], [address]
"Assignee:    [Fannie Mae], [address], Instrument No. 2011-013282

---

[2] Plaintiff brought claims against BAC Home Loans Servicing, LP, and IBM Lender Business Process Services, but plaintiff dismissed those parties voluntarily. Plaintiff also brought claims against ReconTrust, but later entered into a stipulated limited judgment with it. We refer to Fannie Mae and MERS as "defendants."

[3] ORS 86.705(2) explains, in part, that a beneficiary is "a person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest." When plaintiff initially filed his complaint (and earlier, when the trust deed was signed by the parties), the definition of "beneficiary" was found in a different subsection of ORS 86.705 and with text that was slightly different, though not materially so, than the text set out above. *See* Or Laws 2001, ch 712, § 1 (amending definition of "beneficiary" in OTDA, effective Jan 1, 2012); *Brandrup v. ReconTrust Co.*, 353 Or 668, 683 n 3, 303 P3d 301 (2013) (setting out definition of "beneficiary" prior to 2011 amendment and noting that that amendment did not materially change the definition).

"The error to be corrected is (check one):

"[ ] Erroneous reconveyance of trust deed
"Date of recording:
"County clerk instrument record #:

"[X] Erroneous recording of Trustee's Deed
"Date of recording:   July 26, 2011
"County clerk instrument record #:   2011-082580

"The result of this error correction is (check one):

"[ ] The original trust deed is hereby reinstated; or

"[X] The Trustee's Deed is hereby set aside as though the erroneous instrument had not been recorded."

(Underscoring and boldface omitted.) The correction deed, which matched the form in ORS 86.722(1), was signed by a representative from Seterus, Inc., the "attorney-in-fact FOR FANNIE MAE"; Fannie Mae was identified as "Assignee-Beneficiary of original deed of trust."

Defendants then moved to dismiss for lack of subject matter jurisdiction. Defendants argued that the correction deed rescinded the trustee's deed, voided the foreclosure sale, and reinstated the trust deed. According to defendants, the correction deed had accomplished the relief sought in plaintiff's complaint, and the case was therefore moot. Defendants explained that they had "made a business decision to commence judicial foreclosure proceedings of the Deed of Trust in lieu of any further effort to foreclose the Deed of Trust non-judicially, without admission of any violation or wrongdoing."

The trial court determined that the correction deed "did not vacate the [trustee's] deed or reconvey the property to plaintiff," and thus the controversy was not moot "because the parties continue to require the court's declaration resolving their dispute concerning title to the property and rights under the [trust deed] and Plaintiff's liability to non-judicial foreclosure." The court also found that defendants had not initiated a judicial foreclosure and thus defendants were "free to take other actions with respect to Plaintiff's home, including conducting another non-judicial foreclosure at any time, notwithstanding Defendants' oral representation at trial that they would not do so but intend rather to

proceed with a judicial foreclosure." The trial court accordingly denied defendants' motion to dismiss.

The court later held a bench trial on the merits of plaintiff's declaratory relief claims. Relying on our decision in *Niday*, 251 Or App at 299-300, the court determined that *former* ORS 86.735(1) "requires that any assignment of the trust deed by the trustee or the beneficiary must be recorded before foreclosure by advertisement and sale may be pursued"; that "GreenPoint was the original beneficiary of the trust deed and Fannie Mae is the successor beneficiary"; and that "[n]o assignment from GreenPoint to Fannie Mae was recorded in the deed records of Multnomah County." Consistent with those determinations, the court agreed with plaintiff that the foreclosure sale was invalid because all assignments of the trust deed had not been recorded as required by *former* ORS 86.735(1). Plaintiff later requested attorney fees and costs under the terms of the trust deed and ORS 20.096, and the trial court awarded those fees and costs.[4] In a general judgment, the court ruled that the trust deed "was not susceptible to nonjudicial foreclosure by advertisement and sale because there was no recorded assignment from GreenPoint to the appropriate successor beneficiary." Declaring the sale "void," the court ordered that plaintiff's "ownership interest in and title to the property shall be restored, the obligations of Plaintiff under the Promissory Note shall be reinstated and the trust deed securing Plaintiff's obligation shall be reinstated."

On appeal, defendants raise several assignments of error, but we need only address two of them. First, we address defendants' contention that plaintiff's claims became moot—and therefore nonjusticiable—when Fannie

---

[4] The trust deed provided that "Lender shall be entitled to collect all expenses incurred in pursuing [certain rights under the trust deed], including, but not limited to, reasonable attorneys' fees and costs of title evidence." (Emphasis omitted.) ORS 20.096(1) provides:

"In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract."

Mae recorded the correction deed shortly before trial, and the trial court therefore erred in denying defendants' motion to dismiss. Second, on the merits, we address defendants' argument that the trial court's judgment must be reversed because it is inconsistent with the Supreme Court's subsequent decisions in *Niday* and *Brandrup*.

In support of their threshold argument that plaintiff's claims should have been dismissed as moot before trial, defendants contend that, when a person records a correction deed, as described in ORS 86.722(1), that recording has the legal effect of restoring the parties' interest in the trust deed as if the foreclosure sale and the resulting trustee's deed never existed. In defendants' view, once they recorded a correction deed in this case, they delivered all the relief plaintiff sought in his complaint, and thus the trial court should have dismissed plaintiff's claims because a judgment for plaintiff would have had no "practical effect on or concerning the rights of the parties." *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993).

Defendants' arguments, though rooted in mootness, present a question of statutory interpretation. We must examine the text of ORS 86.722(1) in context, along with relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Because that statute is part of the OTDA, a web of statutes dealing with trust deeds and the nonjudicial foreclosure process, we begin with a review of the OTDA's foundational principles.

When plaintiff borrowed money to purchase a home, the loan was memorialized in a promissory note, and a separate security agreement, a trust deed, created a lien on the property to secure his obligation to pay the lender, originally GreenPoint. *See Brandrup*, 353 Or at 676. A trust deed executed under the OTDA "conveys an interest in real property to a trustee in trust to secure the performance of an obligation the grantor or other person named in the deed owes to a beneficiary." *Former* ORS 86.705(7) (2011), *renumbered as* ORS 86.705(8) (2013). The trustee has a legal interest in the property, which includes the power to sell the property as described in the OTDA in the event of the

borrower's default. ORS 86.710; *former* ORS 86.755 (2011), *renumbered as* ORS 86.782 (2013). The trustee holds and exercises that legal interest for the benefit of the trust deed's "beneficiary"—the person to whom the obligation that the trust deed secures is owed, which at the time of origination is the lender. *Brandrup*, 353 Or at 689. And the grantor, generally the borrower, "conveys an interest in real property by a trust deed as security for the performance of an obligation." ORS 86.705(4); *see also Brandrup*, 353 Or at 675-79 (describing OTDA in greater detail).

As relevant here, there are two events that mark the end of that arrangement of the parties' interest under a trust deed: (1) the reconveyance of a trust deed from the trustee to the borrower, which ordinarily occurs after a borrower has paid off the loan secured by the trust deed; or (2) the recording of a trustee's deed, which ordinarily occurs after a trustee sells property at a nonjudicial foreclosure sale. First, with respect to the reconveyance, "[i]f the borrower repays the loan secured by the trust deed in full, the trustee must 'reconvey the estate of real property described in the trust deed' (that is, release the lien on the property) to the borrower, ORS 86.720," and that reconveyance may be recorded in the county records. *Brandrup*, 353 Or at 678. Second, as to the trustee's deed, if a borrower defaults on his payment obligations under a trust deed, the trustee may sell the property at a public auction to the highest bidder without judicial oversight. *Former* ORS 86.755. The high bidder at the auction "shall pay at the time of sale the price bid" and, "within 10 days following payment, the trustee shall execute and deliver the trustee's deed to the purchaser." *Former* ORS 86.755(3). The trustee's deed, which must recite the details of the foreclosure sale, conveys to the purchaser the grantor's interest in the property. *Former* ORS 86.755(4); *former* ORS 86.775 (2011), *renumbered as* ORS 86.800 (2013). Although the OTDA does not require that the trustee's deed be recorded in the county records, if the trustee's deed is recorded, the facts recited in the deed "shall be prima facie evidence in any court of the truth of the matters set forth therein" and "shall be conclusive in favor of a purchaser for value in good faith relying upon them." *Former* ORS 86.780 (2011), *renumbered as* ORS 86.803 (2013).

The correction deed set out in ORS 86.722(1) corrects errors in the "reconveyance of [a] trust deed" and errors in the "recording of [a] Trustee's Deed":

"To correct an error concerning the status or effect of a recorded trust deed, a person may present an instrument to the county clerk for recording in the deed and mortgage records of the county, and the county clerk shall record the instrument if it otherwise meets the requirements for an instrument to be recorded under ORS chapter 205 and is in substantially the following form:

"CORRECTION OF ERROR(S)
"IN THE DEED AND MORTGAGE RECORDS
"RELATING TO
"A TRUST DEED
"(ORS 86.705 to 86.795)

"This instrument is recorded to provide notice of an error relating to:

"<u>Original Deed of Trust</u>

"County clerk instrument record #:

"Grantor (name):

"Trustee (name):

"Beneficiary (name):

"Assignee(s), if any (name(s)):

"The error to be corrected is (check one):

"[  ] Erroneous reconveyance of trust deed

"Date of recording:

"County clerk instrument record #:

"[  ] Erroneous recording of Trustee's Deed

"Date of recording:

"County clerk instrument record #:

"The result of this error correction is (check one):

"[  ] The original trust deed is hereby reinstated; or

"[  ] The Trustee's Deed is hereby set aside as though the erroneous instrument had not been recorded.

"Date _____

"Name (printed) _____

"Signature _____

"(Beneficiary of original deed of trust)"[5]

(Underscoring in original.)

    The parties agree that the two types of errors in the correction deed described in ORS 86.722(1) each match one—and only one—of the results listed. When correcting the "[e]rroneous reconveyance of trust deed," a correction deed specifies one possible result: "[t]he original trust deed is hereby reinstated." And when correcting the "[e]rroneous *recording* of Trustee's Deed," the correction deed "set[s] aside" the trustee's deed *as though the erroneous instrument had not been recorded.*" ORS 86.722(1) (emphases added). Accordingly, a correction deed either (1) undoes a mistaken reconveyance of a trust deed, reinstating the original trust deed, or it (2) undoes a mistaken recording of a trustee's deed by setting aside the trustee's deed as though it "had not been recorded." The parties' agreement ends there. Defendants contend that, when a correction deed sets aside the trustee's deed "as though the erroneous instrument had not been recorded," it also voids the foreclosure sale and reinstates the borrower's interest (and obligation) under the trust deed. Plaintiff responds that a correction deed places a borrower and a beneficiary "in the same position they would hold if the Trustee's Deed had *never* been recorded," without also voiding the foreclosure sale and reinstating the original trust deed. (Emphasis in original.)

    The text of the correction deed set out in ORS 86.722(1) presents two immediate problems for defendants' argument. First, defendants contend that correcting the erroneous recording of a trustee's deed reinstates the original trust deed, even though the correction deed connects that result to a different error—an erroneous trust deed reconveyance. Put another way, a person examining the deed records who encounters a correction deed that appeared as

---

[5] We have omitted the notary public acknowledgement section of the correction deed form.

follows would, in defendants' view, be put on notice that the correction deed reinstated the original trust deed:

"The result of this error correction is (check one):

"[  ] The original trust deed is hereby reinstated; or

"[x] The Trustee's Deed is hereby set aside as though the erroneous instrument had not been recorded."

To accept defendants' argument, then, we must conclude that a correction deed *explicitly* undoes the recording of a trustee's deed and *implicitly* reinstates the original trust deed—a particularly awkward reading given that reinstatement of the original trust deed appears as a "result" that is not selected on the face of the correction deed.

Second, and more significantly, although ORS 86.722(1) speaks to the "[e]rroneous *recording*" of a trustee's deed and the setting aside of that deed "as though the erroneous instrument *had not been recorded*," defendants present no authority for the proposition that undoing the recording of the trustee's deed has the automatic effect of voiding the legal transfer of interest to a purchaser at the foreclosure sale and reinstating the borrower's interest to the property under the trust deed. (Emphases added.) To the contrary, the OTDA establishes that the recording of a trustee's deed is distinct from the transfer of interest in foreclosed property to the purchaser at the foreclosure sale. After the trustee auctions property at the foreclosure sale, the high bidder "shall pay at the time of sale the price bid" and, within 10 days following payment, "the trustee shall execute and deliver the trustee's deed to the purchaser." *Former* ORS 86.755(3). That execution and delivery of the trustee's deed is effective to transfer an interest in the property to the purchaser. *See, e.g., Halleck v. Halleck et al,* 216 Or 23, 28-29, 337 P2d 330 (1959) (explaining that, "[p]roperly defined, delivery describes the passage of a property interest, normally the full legal title, from the grantor to the grantee" and that "[t]he interest passes if the grantor manifests the intention to pass it immediately—in the case of transfers of interest in real property the intention to make legally operative a properly executed deed"); *Lancaster v. May, As Administrator,* 194 Or 647, 654, 243 P2d 268 (1952) ("To constitute a complete delivery, there

must, of course, be acceptance by the grantee."). Although the recording of a deed creates a presumption of delivery and acceptance, *Halleck*, 216 Or at 27; *Lancaster*, 194 Or at 655, the purchaser at the foreclosure sale may still gain title to the property when the trustee executes and delivers the trustee's deed, even if the trustee's deed is not recorded. Indeed, as noted, the OTDA does not require the recording of the trustee's deed. Accordingly, a correction deed setting aside a trustee's deed as though it had not been recorded would not automatically void the purchaser's interest and reinstate the borrower's interest under the trust deed.

Although defendants put forward no authority to support their view that the text of a correction deed does more than what it says—that is, it sets aside the trustee's deed as though it "had not been recorded," ORS 86.722(1)— they assert that the correction deed must be read differently in light of ORS 86.722(2). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (text of the statute must be viewed in context, which includes other provisions of the same statute). Under ORS 86.722(2),

> "*[r]einstatement of a trust deed based on the correction of an error under this section* does not affect the rights of a bona fide purchaser for value or of a bona fide purchaser for value holding a security interest in the real property *if the purchaser acquired an interest after the erroneous* trust deed reconveyance or *trustee's deed was recorded and before the error was corrected.*"

(Emphases added.) Focusing on the italicized text, defendants observe that the statute protects a bona fide purchaser for value who acquires an interest in the property after an erroneous trustee's deed is recorded and before the error is corrected against the "[r]einstatement of a trust deed based on the correction of an error under this section." As defendants see it, ORS 86.722(2) shows that correcting the erroneous recording of a trustee's deed automatically effects the reinstatement of the trust deed; otherwise, bona fide purchasers who rely on a recorded trustee's deed before correction would not need protection against the "[r]einstatement of a trust deed."

Although we agree that ORS 86.722(2) supports the view that correcting an erroneous recording of a trustee's deed might make it possible for the trust deed to later be reinstated, we do not agree that, whenever the beneficiary uses the correction deed to set aside the trustee's deed as though it had not been recorded, reinstatement of the trust deed automatically follows. That is so for the reasons we have reviewed above: (1) the correction deed set out in ORS 86.722(1)—the instrument that is to provide record notice of an error and the result of the error correction—identifies the result of the error correction as cancelling the recording of the trustee's deed, not reinstating the trust deed; and (2) the recording of a trustee's deed is a distinct legal event from the purchaser gaining an interest in the property, such that undoing the recording of the trustee's deed would not extinguish a purchaser's interest in the property. Beyond that, defendants' effort to use ORS 86.722(2) to control the interpretation of ORS 86.722(1) presents a false choice, ignoring the possibility that undoing the recording of a trustee's deed removes an impediment to unwinding a foreclosure sale, even if it does not automatically unwind that sale. Indeed, that understanding of a correction deed best harmonizes the text of both subsections of ORS 86.722, other provisions of the OTDA addressing the recording of trustee's deeds, our case law discussing those provisions, and the legislative history of ORS 86.722.

The OTDA establishes that recording the trustee's deed has significance in itself: If the trustee's deed is recorded, the recitals contained in the deed (as well as recitals in the notice of sale and other statutory notices) "shall be prima facie evidence in any court of the truth of the matters set forth therein" and "shall be conclusive in favor of a purchaser for value in good faith relying upon them." *Former* ORS 86.780. And we have at least suggested that the presumption of finality in *former* ORS 86.780 might prevent the undoing of a foreclosure sale when a creditor agrees with the borrower to continue payments on the trust deed but the trustee goes forward with the foreclosure sale and records the trustee's deed. In *Staffordshire Investments, Inc. v. Cal-Western*, 209 Or App 528, 149 P3d 150 (2006), *rev den*, 342 Or 727 (2007), after the borrower

defaulted on her obligations under a trust deed, the trustee initiated a nonjudicial foreclosure sale, but, just before the sale, the loan servicer for the beneficiary of the trust deed entered into a forbearance agreement with the borrower. The trustee was unaware of the forbearance agreement, its auctioneer proceeded with the sale, and the high bidder paid the trustee for the property. The servicer soon learned of the sale and instructed the trustee not to issue the trustee's deed to the purchaser; the trustee complied and later returned the money paid by the purchaser. The purchaser brought a breach of contract claim against the loan servicer, seeking the lost profits it would have received upon selling the property purchased at the foreclosure sale. The loan servicer argued that the agreement of sale was void because the forbearance agreement deprived the trustee of the power to sell the property.

On appeal, we reasoned that, because "there was no default for which the sale of the property was authorized," the trustee "lacked the statutory authority to sell the property," and we concluded that "the discovery of the agreement to postpone the sale *before the execution of the trustee's deed* render[ed] the contract [of sale between the trustee and the purchaser] void." *Id.* at 540, 543-44 (emphasis added). In rejecting the suggestion that voiding the contract of sale "would frustrate the legislature's objective to provide a quick and efficient remedy for creditors against defaulting buyers," we emphasized that the trustee's deed had not been "issued and recorded." *Id.* at 542-43. While recognizing that *former* ORS 86.755(3) "provides that the trustee shall execute and deliver the trustee's deed within 10 days following payment of the price bid," we explained that "the statutory presumption of finality [under *former* ORS 86.780] does not arise until the trustee's deed is issued and recorded." *Id.* at 543. And where "the agreement to postpone the sale [was] discovered before the trustee's deed [was] executed," voiding the contract of sale between the trustee and the purchaser did not violate the finality embodied in the OTDA. *Id.* We left for another day "the question of the significance of the execution and recording of the trustee's deed *on the finality of a nonjudicial foreclosure sale.*" *Id.* (emphasis added).

Thus, in *Staffordshire Investments, Inc.*, we suggested without deciding that *former* ORS 86.780 might freeze the parties' interests once the trustee's deed has been recorded, even if the grantor had entered into a forbearance agreement with the beneficiary before the foreclosure sale. That scenario, it turns out, was presented to the legislature as the sole reason to adopt the legislation that led to ORS 86.722, House Bill (HB) 2759 (2009), with respect to correcting the erroneous recording of a trustee's deed. According to Alan Brickley, a title company attorney who brought the bill forward, "[t]he purpose of HB 2759 [was] to create a statutory process for correcting errors in the public record that are inadvertently created by lenders and others in the preparation of certain documents relating to Deed and Mortgage Records." Testimony, Senate Committee on Judiciary, HB 2759, May 19, 2009, Ex 9 (statement of Alan Brickley). Brickley zeroed in on errors relating to recording of a trustee's deed:

> "The final step in a foreclosure process—the trustee process, is a sale, followed by a deed from the trustee to whoever the successful bidder is at the sale.

> "The problem that occurs in this context is that, especially with the large national lenders, the workout department and the foreclosure department are two separate entities within the same organization, they don't talk to each other. And more than one time we've had a situation where the workout department has made an agreement with the borrower in order to, you know, continue payments on the trust deed, and continue in the property.

> "But the foreclosure department doesn't have that information. They go ahead with the sale. They record the [trustee's] deed. *Now, literally, there is no way to unwind that transaction.*

> "So again, the whole purpose for that document is to correct, or rescind is probably a better word, that trustee's deed so that the workout can continue without any interruption. So * * * that's the purpose behind the bill."

Audio Recording, House Committee on Agriculture, Natural Resources & Rural Communities, HB 2759, March 12, 2009, at 3:00 (statement of Alan Brickley), https://olis.leg.state.or.us

(accessed June 17, 2015) (emphasis added).[6] Brickley similarly explained that,

> "[i]n the process of foreclosing real property trust deeds there are often attempts at workouts or sales simultaneous with the foreclosure process. It is often the case that the foreclosure department is not notified when an agreement is reached with the borrower. As a consequence the lender will complete the foreclosure sale, recording a deed of transfer. *When the error is discovered there is no process for rescinding the sale and reinstating the trust deed/lien on the real estate.*"

Testimony, Senate Committee on Judiciary, HB 2759, May 19, 2009, Ex 9 (statement of Alan Brickley) (emphasis added).

Those comments support the view that the recording of a trustee's deed serves as an impediment to unwinding the foreclosure sale. Putting together (1) the suggestion in *Staffordshire Investments, Inc.,* that recording the trustee's deed might give the foreclosure sale finality so as to override a forbearance agreement between a borrower and lender and (2) the legislature's specific concern with foreclosure sales that go forward despite a lender's forbearance agreement with a borrower, the correction deed mechanism created by ORS 86.722 reflects the legislature's interest in undoing the recording of a trustee's deed to make it possible, by further action, to unwind the foreclosure sale and restore the grantor's obligation under the trust deed. In that respect, correcting an erroneous recording of a trustee's deed "correct[s] an error concerning the status or effect of a recorded trust deed." ORS 86.722(1).

But it does not follow that the legislature intended the correction deed to do more than undo the recording of the trustee's deed. There is a world of difference between the correction deed removing an impediment to unwinding the

---

[6] With respect to erroneous reconveyances, Brickley explained that, "[i]n order to release a trust deed, there has to be either a partial or full reconveyance executed by the trustee" to the borrower, but "oftentimes the lender, or the trustee, somebody is going to make a mistake either calling it a full reconveyance or a partial when it's the other, and there is currently no method to correct that on the record." Audio Recording, House Committee on Agriculture, Natural Resources & Rural Communities, HB 2759, March 12, 2009, at 1:40 (statement of Alan Brickley), https://olis.leg.state.or.us (accessed June 17, 2015).

foreclosure sale—a result consistent with the text of the correction deed and the legislative history—and the correction deed allowing the beneficiary to unilaterally unwind that sale and automatically restore the parties' interest under the original trust deed, without the involvement of the affected parties—a result that goes beyond the correction deed's wording and the legislative history. Under defendants' reading of ORS 86.722(1), the purchaser at the foreclosure sale who pays the trustee and who acquires an interest in the property when the trust deed is executed, delivered, and recorded would be left without any right in the property at the moment the beneficiary of the original trust deed records the correction deed. ORS 86.722(2) would not protect that purchaser because it protects only bona fide purchasers who "acquire[] an interest [in the property] *after* the * * * trustee's deed was recorded and before the error was corrected"; the purchaser at the trustee's sale would acquire an interest when the trustee's deed is executed and delivered or at least when the trustee's deed is recorded—not after.[7] (Emphasis added.) We cannot endorse defendants' efforts to read ORS 86.722 as allowing trust deed beneficiaries to upend seemingly final foreclosure sales without any involvement of the affected parties—a result that finds no mooring in the text of the correction deed in ORS 86.722(1) and that would upset the "well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor." *Staffordshire Investments, Inc.*, 209 Or App at 542.

Rather, considering the text of ORS 86.722(1) and (2), other provisions of the OTDA, and the legislative history, we conclude that, when a beneficiary uses the correction deed to set aside the trustee's deed as though it "had not been recorded," that action restores the interest of the purchaser, trustee, borrower, and lender in the same position they were in as if the trustee's deed had not been recorded. That allows the beneficiary and trustee to undertake further efforts to

---

[7] If the purchaser at the foreclosure sale sold the property to another buyer after the trustee's deed was recorded, ORS 86.722(2) would protect that buyer—that is, the correction of errors deed would not affect that buyer's rights in the property—if the trust deed beneficiary later recorded a correction deed.

unwind the foreclosure sale and reinstate the trust deed, except as to any bona fide purchaser for value who acquires an interest in the property after an erroneous trustee's deed is recorded and before the error is corrected. ORS 86.722(2). But the correction deed, by itself, does not allow the beneficiary to unilaterally unwind the foreclosure sale, void the purchaser's interest, and reinstate the borrower's title (and obligations) under the original trust deed without any further action or involvement of any of the affected parties. It follows that the correction deed did not deliver the relief that plaintiff sought in his complaint, that the declaration that plaintiff sought had a practical effect on the parties, and that plaintiff's claims were not moot. Accordingly, the trial court did not err in denying the motion to dismiss plaintiff's case on that basis.

We turn, then, to defendants' contention that the trial court erred by concluding that the trust deed was not susceptible to nonjudicial foreclosure without a recorded assignment that reflected the transfer of the note from GreenPoint to Fannie Mae. In the trial court, there was no dispute that the assignment of the note from GreenPoint to Fannie Mae automatically effected, by operation of law, an assignment of the trust deed. *See Brandrup*, 353 Or at 694. And there was no dispute that that assignment of the trust deed was not recorded. Based on our decision in *Niday*, 251 Or App at 300, the trial court reasoned that the failure to record the assignment violated *former* ORS 86.735(1), which provides that "[t]he trustee may foreclose a trust deed by advertisement and sale *** if *** any assignments of the trust deed by *** the beneficiary *** are recorded." As a result, the trial court concluded that the trust deed "was not susceptible to nonjudicial foreclosure by advertisement and sale because there was no recorded assignment from GreenPoint to the appropriate successor beneficiary."

The Supreme Court rejected that understanding of *former* ORS 86.735(1) in *Brandrup* and *Niday*, decisions that issued after the trial court's judgment. The Supreme Court explained that, "in providing that a trustee may nonjudicially foreclose only if 'any assignments of the trust deed by the trustee or beneficiary *** are recorded,' [*former*] ORS 86.735(1) refers to written assignments of a trust deed in

recordable form, and not to assignments of trust deeds that result by operation of law by transfer of the note." *Niday*, 353 Or at 661; *see Brandrup*, 353 Or at 693-701 (setting out statutory analysis). *Former* ORS 86.735(1) does not require that assignments resulting from the transfer of a promissory note be recorded before a nonjudicial foreclosure can go forward. It follows that the trial court erred in concluding that the trust deed could not be foreclosed through nonjudicial foreclosure because the assignment from GreenPoint to Fannie Mae was not recorded.[8]

Although plaintiff does not dispute that conclusion, he now argues, for the first time, that defendants violated the requirements of a different statute in the OTDA. In plaintiff's view, *former* ORS 86.745(1) (2011), *renumbered as* ORS 86.771(1) (2013), requires that the trustee's notice of sale identify the "true beneficiary" of the trust deed, the notice of sale here identified MERS (not Fannie Mae) as the beneficiary, and that purported violation of *former* ORS 86.745(1) rendered the nonjudicial foreclosure sale defective.[9] Having charted that new course in his appellate briefing, plaintiff asserts that we should exercise our discretion to affirm the trial court's judgment as "'right for the wrong reason.'" *Outdoor Media Dimensions Inc. v. State of Oregon*,

---

[8] Plaintiff also claimed that the recorded assignment of the trust deed from MERS, as beneficiary, to Fannie Mae was not effective because MERS was not a beneficiary under the OTDA. That is correct under *Brandrup*. *See Brandrup*, 353 Or at 683-89. As defendants note, however, because GreenPoint assigned the trust deed to Fannie Mae when it transferred the note to Fannie Mae and because that assignment did not need to be recorded, Fannie Mae was a successor beneficiary under the OTDA. Fannie Mae therefore could appoint a successor trustee and initiate foreclosure proceedings, and the MERS assignment to Fannie Mae was inconsequential to the validity of the foreclosure sale. Plaintiff does not argue otherwise on appeal.

[9] *Former* ORS 86.745(1) provides that "[t]he notice of sale shall *** [l]ist the names of the grantor, trustee and beneficiary in the trust deed, and the mailing address of the trustee." As support for his argument, plaintiff points to the Supreme Court's statement in *Brandrup* that "the OTDA is laced with provisions that indicate that the grantor is entitled to know the identity of the beneficiary," including the requirement that "under [*former*] ORS 86.745(1), a notice of sale must include the name of the 'beneficiary.'" 353 Or at 700. The court made that observation when addressing "a practical concern that *** construing the phrase 'any assignments' in [*former*] ORS 86.735(1) as applying only to formal, written assignments of a trust deed renders the provision meaningless" because that construction suggests that homeowners in foreclosure might not be able to ascertain "the identity of the true beneficiary." *Id.*

331 Or 634, 659-60, 20 P3d 180 (2001) (describing conditions that must be satisfied for reviewing court to exercise its discretion to correct error as right for the wrong reason).

Defendants respond that we should not consider plaintiff's argument under *former* ORS 86.745(1) on appeal because plaintiff's complaint "mentioned nothing whatsoever about the notice of sale being defective, nor was the argument ever raised at any point" in the trial court. Defendants further argue that affirming on an alternative basis "is inappropriate when a respondent relies on a claim raised for the first time on appeal that by rule should have been, but was not, raised below."[10]

We agree with defendants. In *Outdoor Media Dimensions Inc.*, the court reiterated its view that, "'when the trial court arrived at a correct result, but on grounds different than those which, in our opinion, are more proper as the basis for such a result, * * * it is not improper to affirm the trial court; *provided, of course, that the pleadings are sufficiently broad* and there is sufficient evidence in the record * * *.'" 331 Or at 659 (quoting *State Farm Fire v. Sevier*, 272 Or 278, 298, 537 P2d 88 (1975)) (emphasis added); *Clemente v. State of Oregon*, 227 Or App 434, 439, 206 P3d 249 (2009) (explaining that reference to "pleadings" would "encompass the various mandatory issue-framing provisions in the rules of civil procedure"). The pleadings in this case are not sufficiently broad to raise an issue under *former* ORS 86.745(1): Plaintiff never alleged that the notice of sale was defective as a basis for relief in his complaint, and he never raised that argument to the trial court. Where plaintiff pleaded and pursued claims for declaratory relief to a trial on the merits, he cannot seek to prevail on appeal by pursuing an entirely different claim as a basis for declaratory relief that was never pleaded or raised below. *See, e.g., Clemente*, 227

---

[10] Defendants also respond on the merits of plaintiff's claim under *former* ORS 86.745(1), arguing that, under that statute, the notice of sale is required to list the name of the beneficiary "in the trust deed"—so as to identify the trust deed to which the notice of sale refers. Here, the notice of sale identified MERS as the beneficiary listed in the trust deed, and, in defendants' view, the notice of sale therefore complied with *former* ORS 86.745(1). Because we conclude that plaintiff's argument regarding the notice of sale is not properly before us, we need not address that argument, or any other, on the merits of plaintiff's claim that the notice of sale was defective.

Or App at 440 (concluding that the reviewing court "lack[ed] authority to consider" the defendant's issue preclusion claim as alternative basis for affirmance, where that claim was not raised in the defendant's answer, motion to dismiss, or motion for summary judgment); *Fox v. Collins*, 213 Or App 451, 460-61, 162 P3d 998, *rev den*, 343 Or 223 (2007) (rejecting the defendants' arguments that the trial court should affirm summary judgment in their favor based on a statute of limitations defense that was not pleaded as an affirmative defense in their answer and noting that the trial court could not *sua sponte* consider a statute of limitations defense that is not pleaded).

In sum, plaintiff's argument that the notice of sale was defective and rendered the foreclosure void is not a proper basis for affirmance on appeal. The only basis that plaintiff presented to the trial court for declaring the foreclosure sale void—in his pleadings and argument—was that the assignment to Fannie Mae was defective, either because MERS was not a beneficiary and had no interest to assign to Fannie Mae or because the assignment from GreenPoint to Fannie Mae was not recorded. The trial court agreed with that second theory and awarded relief on that basis. But as plaintiff acknowledges, that ruling was error under the Supreme Court's later-announced decisions in *Niday* and *Brandrup*. Accordingly, the trial court's declaration in favor of plaintiff and its award of attorney fees and costs must be reversed.[11]

Reversed and remanded.

---

[11] In light of our resolution of that issue, we need not address defendants' remaining assignments of error (the second assignment of error and the fourth, fifth, sixth, and seventh assignments of error).